# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 36244

STATE OF IDAHO,

      Plaintiff-Respondent,

v.

JONATHAN EARL FOLK,

      Defendant-Appellant.

Boise, June 2011 Term

2011 Opinion No. 80

Filed: June 30, 2011

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, in and for Bonneville County. The Hon. Jon J. Shindurling, District Judge.

The judgment of the district court is <u>vacated</u>.

Diane M. Walker, Deputy State Appellate Public Defender, Boise, argued for appellant.

John C. McKinney, Deputy Attorney General, Boise, argued for respondent.

EISMANN, Chief Justice.

Defendant was tried and convicted of lewd conduct. He contends that he was denied a speedy trial, that the trial court infringed upon his right of self-representation, and that it erred in instructing the jury. We vacate the judgment and remand this case for further proceedings consistent with this opinion.

## I.

### Factual Background.

On December 25, 2007, at about 5:30 p.m., the mother of three minor children (Mother) arrived home after running an errand and went into the kitchen to help her grandmother finish preparing Christmas dinner. As she was walking to the kitchen, Jonathan Folk (Defendant) was in the living room. He had come over to pick up a house guest. After about ten to fifteen minutes, Mother walked into the living room and asked her husband where their five-year-old son (Child) was. He said that he thought Child was in his bedroom. Mother walked to Child's

room, and as she was nearing the open door to the room she heard Child say, "That's gross." As she walked into the room, she saw Child lying on his back on the bed and Defendant kneeling down in front of Child with Child's legs around Defendant and his hands on Child's hips. The bed was a small child's bed, about ten inches off the floor. Mother asked what they were doing, and both Child and Defendant said they were just playing. Both Defendant and Child were fully clothed, and it did not appear that either of them had just pulled or zipped their pants up. Mother did not see any signs of any type of sexual act by Defendant. Defendant stood up and walked out of Child's room, and then returned and sat on the floor while Child picked up his toys pursuant to Mother's instructions. Defendant and the guest left about one and one-half hours later. At about 4:00 a.m. that night, Child awakened Mother and stated that he had just had a nightmare. Mother asked what it was about, and Child responded that it was about what that guy did to Child last night. Mother asked what guy, but Child would not answer. Later that morning, Mother telephoned the police and then asked Child what had happened last night. Child answered that Defendant had placed his mouth on Child's penis.

On January 9, 2008, the State filed a complaint charging Defendant with lewd conduct by committing oral-to-genital contact with Child. The magistrate issued a warrant for Defendant's arrest and set bail at $100,000. Defendant was arrested, and when he appeared in court on January 14, 2008, he requested and was appointed a public defender. Defendant remained in jail throughout these proceedings.

The preliminary hearing was held on January 23, 2008. Prior to that date, Defendant retained counsel to represent him. Based upon the evidence at the hearing, the magistrate found that there was probable cause to believe that Defendant committed the crime of lewd conduct, and he bound the Defendant over to answer in district court. Prior to the first trial setting, Defendant's retained counsel was permitted to withdraw because Defendant was not paying him according to their fee agreement. The court reappointed the public defender to represent Defendant, but he later exercised his right to represent himself. The district court had the public defender remain as standby counsel to assist Defendant. Defendant was tried by a jury and found guilty of lewd conduct, and the district court sentenced him to life in prison without parole. Defendant then timely appealed.

**II.**

2

**Did the State Violate Defendant's Statutory Right to a Speedy Trial?**

Defendant contends that the State violated his statutory right to a speedy trial. Absent a showing of good cause to the contrary, Idaho Code § 19-3501(2) requires the district court to dismiss a felony case "[i]f a defendant, whose trial has not been postponed upon his application, is not brought to trial within six (6) months from the date that the information is filed with the court." On January 28, 2008, the State filed an information in the district court charging Defendant with lewd conduct by oral-to-genital contact. The trial in this case did not commence until January 5, 2009, almost one year after the information was filed. Defendant contends that there was no good cause for failing to bring him to trial within the six-month period. Because the trial was postponed upon Defendant's application prior to the running of the six-month period, we need not address whether there was good cause under the statute.

Defendant was arraigned in district court on February 6, 2008, and he entered a plea of not guilty to the charge. A jury trial was set to commence on March 24, 2008. On February 26, 2008, Defendant's retained counsel filed a motion to withdraw on the ground that Defendant had not met the terms of their financial agreement. That motion was heard on March 12, 2008, and the court granted the motion. Because Defendant could not afford counsel, the court then reappointed the public defender, who was present in court. The court asked the public defender if he would be ready to proceed to trial on March 24, 2008, and when he answered that he would not, the court rescheduled the jury trial to May 27, 2008.

We have not previously addressed whether postponement of the trial at a defendant's request waives the protection of the statute even if the trial is then rescheduled within the six-month period. *State v. Young*, 136 Idaho 113, 116, 29 P.3d 949, 952 n.2 (2001). We now answer that question and hold that it does.

The statute's wording does not indicate that a defendant loses the statute's protection only if the postponement requested by the defendant causes the trial to be scheduled beyond the six-month period. The statute requires dismissal "[i]f a defendant, *whose trial has not been postponed upon his application*, is not brought to trial within six (6) months from the date that the information is filed with the court." I.C. § 19-3501(2) (emphasis added). To hold that the postponement upon defendant's application waives the protection of the statute only if such postponement causes the trial to be rescheduled beyond the six-month period would require rewriting the statute. Because the initial trial setting was postponed upon Defendant's

3

application, he waived the protection of the statute. Therefore, Idaho Code section 19-3501(2) did not require dismissal of this action once Defendant was not tried within six months after the information was filed.

## III.

### Did the State Violate Defendant's Constitutional Right to a Speedy Trial?

Defendant contends that he was denied his right to a speedy trial under the State and Federal Constitutions. Article 1, section 13, of the Idaho Constitution provides, "In all criminal prosecutions, the party accused shall have the right to a speedy and public trial . . . ." In determining whether a defendant has been deprived of the right to a speedy trial under our State constitution, we have adopted the four-part balancing test used by the United States Supreme Court to determine whether a defendant has been deprived of the right to a speedy trial under the Sixth Amendment to the Constitution of the United States. *State v. Young*, 136 Idaho 113, 117, 29 P.3d 949, 953 (2001). "Under the Idaho Constitution, the period of delay is measured from the date formal charges are filed or the defendant is arrested, whichever occurs first." *Id*.[1] "The four factors to be balanced are (1) the length of the delay, (2) the reason for the delay, (3) the assertion of accused's right to a speedy trial, and (4) the prejudice to the accused." *Id*.

**a. Length of delay.** The length of the delay is a triggering mechanism. "Until there is some delay which is presumptively prejudicial, it is unnecessary to inquire into the other three factors." *Id*. "[T]he length of delay that will provoke such an inquiry is necessarily dependent upon the circumstances of the case." *State v. Holtslander*, 102 Idaho 306, 309, 629 P.2d 702, 705 (1981) (quoting *Barker v. Wingo*, 407 U.S. 514, 530-31 (1972)). "The courts consider the complexity of the crime in making the determination as to whether the delay . . . is uncommonly long . . . ." 21A Am. Jur. 2d *Criminal Law* § 948 (2008). In this case, formal charges were filed on January 9, 2008, and the trial began on January 5, 2009, almost one year later. Considering the crime charged, a delay of almost one year is sufficient to trigger our inquiry into whether Defendant has been denied a speedy trial.

**b. Reason for delay.** The next factor is the reason for the delay. The first trial date was set within about two and one-half months after the information was filed. During that period,

---

[1] "[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." *United States v. Marion*, 404 U.S. 307, 320 (1971).

Defendant was arrested, had a preliminary hearing in the magistrate court, and was bound over to the district court where he entered a plea of not guilty. The case was then set for trial, giving counsel time within which to prepare. Defendant does not contend that there was any unnecessary delay during this period.

The trial was then continued for three months at the request of Defendant, from March 24, 2008, to May 27, 2008, and then to June 23, 2008. The first continuance resulted from the withdrawal of Defendant's retained counsel and the appointment of a public defender on March 12, 2008, who was understandably unable to be prepared for the trial scheduled twelve days later.[2] On May 14, 2008, Defendant elected to represent himself, and the following day he requested a continuance in order to have time for him to prepare to respond to motions filed by the State. He agreed that the trial be rescheduled to June 23, 2008.[3]

The State then requested and was granted a two-week continuance of the trial from June 23 to July 7, 2008, so that the prosecuting attorney assigned to the case could attend a previously scheduled conference in San Francisco. On July 2, 2008, the district court heard three motions presented by the State. They were a motion filed on May 15, 2008, to admit as excited utterances the statements made by Child to Mother during the night immediately following the alleged incident; a motion filed on May 15, 2008, to admit into evidence a video-taped interview of Child; and a motion filed on June 10, 2008, to prevent Defendant from personally cross-examining Child. The court took those motions under advisement and stated that the trial would have to be postponed two months in order to have time to rule, especially on the motion to prevent Defendant from personally cross-examining Child. The court rescheduled the trial to September 8, 2008.

---

[2] Defendant has not raised as an issue on appeal any claim that the district court abused its discretion in permitting Defendant's retained counsel to withdraw close enough to the trial date that the trial had to be postponed in order to give the public defender sufficient time to prepare for the trial.

[3] At the hearing on May 15, 2008, the prosecutor requested a date to hear motions prior to trial and stated that a detective was working on obtaining evidence that may be admissible under Rule 404(b) of the Idaho Rules of Evidence. After the prosecutor advised Defendant of something off the record and then had a discussion with him off the record, Defendant asked for a two-week continuance in order to prepare properly. The court stated that its next available trial date was June 23, 2008. It asked Defendant whether he had any problem with moving the trial to June 23, and Defendant responded, "No, that sounds fine with me." The court then rescheduled the trial to June 23, 2008.

On August 28, 2008, the court issued an opinion granting the motion preventing Defendant from cross-examining Child and ordering that Defendant's standby counsel conduct the cross examination by reading questions prepared by Defendant. The record on appeal does not indicate that the court issued decisions on the other two motions prior to the trial.

There is nothing in the record indicating why it would take two months for the court to decide the motion to prohibit Defendant from cross-examining Child. The State had submitted a memorandum in support of that motion on June 10, 2008, three weeks in advance of the July 2 hearing. Defendant did not submit a memorandum in opposition. At the hearing, the prosecutor did not present any additional argument. He simply stated that the preferable manner of handling the situation would be to have Child testify over closed-circuit television, and if that could not be done then there was case law supporting having standby counsel ask questions prepared by a pro se defendant. In response, Defendant stated that he had no objection to his identity being concealed from Child either by altering his voice or not showing him to Child, but he did object to not being able to ask the questions. He stated that it would inhibit his ability to cross-examine Child because he would have to be writing questions while standby counsel was asking a question, and he would be losing track of what Child was saying and would not be able to watch his body language. The court ultimately ordered that Child would testify by closed-circuit television and that Defendant would not be able to speak during Child's testimony. There is simply nothing in the record indicating why the court could not have made that decision prior to the July 7 trial date.

On August 18, 2008, the State filed a motion to postpone the trial to a date between December 13, 2008, and January 11, 2009, on the ground that witnesses from Illinois and Minnesota would not be available until after December 13, 2008. Those witnesses were expected to testify about Defendant's conduct that resulted in his two child sexual abuse convictions in Illinois. One witness would testify that in 1992 when he was five years of age Defendant sexually molested him, and the other would testify that in 1999 she caught Defendant sexually molesting her four-year-old son. The State also intended to produce evidence that in 1986 Defendant sexually molested a five-year-old boy in Bonneville County, Idaho.[4] The

---

[4] At the hearing on June 11, 2008, the State asked the district court to rule that this evidence was admissible under Rule 404(b) of the Idaho Rules of Evidence. Defendant stated that he understood it was admissible under Idaho case law and therefore did not object. This was before our opinion in *State v. Grist*, 147 Idaho 49, 205 P.3d 1185 (2009).

prosecutor stated that considering Child's age the State could not go forward without those witnesses. In support of the motion, the prosecutor also asserted:

> Your Honor, these people, neither are sophisticated. I've had to convince them that they could fly in an airplane and that Idaho Falls was a safe location. And the 20-year-old's mother is extremely worried. And I have been on the phone numerous times convincing them that we would take care of her son. And so like I said, this isn't a—these aren't sophisticated people, Your Honor, that are used to flying around the country, you know, in a week or two notice.

The district court then granted the continuance and rescheduled the trial to commence on January 5, 2009.

The delay of about six and one-half months from June 23, 2008, to January 5, 2009, is attributable solely to the State. At the August 27, 2008, hearing on the State's motion to continue the trial for convenience of the out-of-state witnesses, the prosecutor stated that the witnesses had been prepared to come for the trial that had been scheduled on July 7, 2008. That trial was vacated sua sponte by the district court on the ground that it needed two months to decide whether to grant the State's motion to prevent Defendant from personally cross-examining Child. It is the State's burden to provide a speedy trial. *State v. Holtslander*, 102 Idaho 306, 311, 629 P.2d 702, 707 (1981). The court, as a State actor, has an obligation to dispose of matters within a reasonable time so as to not infringe upon a defendant's right to a speedy trial. The record does not reflect that it was necessary for the court to vacate the trial scheduled on July 7, 2008, to give the court time to rule upon the State's motion to prevent Defendant from cross-examining Child. Since the State's out-of-state witnesses would have been available to testify on July 7 had the district court not vacated that trial date sua sponte, that delay is attributed to the State, as is the delay caused by the asserted need to vacate the trial again for the convenience of those witnesses. However, there is no indication that the delay attributable to the State was for the purpose of hampering the defense. The delays attributable to the State reflect merely negligence in preparation possibly resulting from indifference to Defendant's right to a speedy trial. Although delay resulting from negligence must be considered, it is a more neutral reason that is weighed less heavily than delay intended to hamper the defense. *Barker v. Wingo*, 407 U.S. 514, 531 (1972).

**c. Assertion by Defendant of right to a speedy trial.** Defendant first asserted his right to a speedy trial when the district court sua sponte vacated the trial scheduled on July 7, 2008,

and rescheduled the trial to September 8, 2008. Defendant asked, "Your Honor, I just have one question. Does that affect my right to a speedy trial?" The court responded, "Well, your right to a speedy trial is to be tried within six months of the Information, unless there's good cause otherwise." The court was apparently concerned about the statutory right to a speedy trial, and not Defendant's constitutional right. The court also stated that it found good cause to try Defendant more than six months after the information was filed "because of the intricacies of this defense and the process of trying to work through the prosecution and the defense." The court did not mention what the intricacies of the defense were. The only defense raised by Defendant was pleading not guilty and requiring the State to prove the alleged crime. Because the court had already ruled on all of Defendant's motions, the intricacies of this defense apparently referred to the fact that Defendant was representing himself and the State had asked to prevent Defendant from cross-examining Child.

During argument on the State's motion to continue the September 8, 2008, trial, Defendant again raised the issue of his right to a speedy trial. He objected to the continuance and, when asked to state his objection, said that he would have to go through the expense of serving subpoenas again and arranging for other witnesses to appear voluntarily. He then stated, "And the prosecutor is asking for a three-and-a-half-month continuance, which I'll have to spend in jail." In granting the motion, the district court stated: "I'd note the defendant has not raised a speedy trial issue here. It's just a matter of he wants to get it over with. And that's understandable." The court failed to appreciate that not wanting to spend additional time in pretrial incarceration and wanting to get the matter resolved are speedy trial issues. The interests that the right to a speedy trial is designed to protect include: "(1) to prevent oppressive pretrial incarceration[ and] (2) to minimize anxiety and concern of the accused." *State v. Young*, 136 Idaho 113, 118, 29 P.3d 949, 954 (2001).

**d. Prejudice to Defendant.** The final factor to be weighed is prejudice to Defendant. "Prejudice is to be assessed in light of the interests of defendants which the right to a speedy trial is designed to protect." *Id*. The first two interests are stated above. With respect to pretrial incarceration, Defendant was in jail throughout the pretrial proceedings. With respect to Defendant's anxiety and concern, as the district court stated, Defendant also wanted to "get the matter over with." However, the record does not reflect the degree to which Defendant was experiencing anxiety and concern regarding other areas of his life. Defendant argues that "he

obviously could not work or spend time with his family; he lived under a cloud of suspicion and he had to contend with the anxiety of waiting nearly twelve months for his trial, not knowing whether he might walk out of jail a free men [sic] . . . ." He does not point to anything in the record indicating that he had a job prior to his incarceration or could have obtained a job, or that he had family members with whom he could have spent time. Likewise, he does not point to anything in the record indicating the extent, if any, to which the pending charge was known by others so as to create a cloud of suspicion.

The third factor is "to limit the possibility that the defense will be impaired." *Id.* This third factor is the most serious "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker v. Wingo*, 407 U.S. 514, 532 (1972). An incarcerated defendant may be hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense.

Defendant contends that he suffered prejudice under the third factor, but the examples he relies upon are not related to his inability to prepare adequately. He cites differences between Child's testimony at trial and his testimony at the preliminary hearing, and conflicting testimony given by Child at trial. However, there is nothing to indicate that those differences were related to any delay in the trial. Rather, the inconsistencies and conflicting statements cited primarily reflect the difficulty of questioning a six-year-old witness.[5]

Defendant also argues that if the trial had not been postponed, the State would not have been able to have the out-of-state witnesses testify about Defendant's prior sexual abuse of a four-year-old boy and a five-year-old boy. Prejudice does not mean that the delay resulted in evidence being admitted that otherwise would not have been available. "[A]lmost all evidence in a criminal trial is demonstrably admitted to prove the case of the state, and thus results in prejudice to a defendant." *State v. Leavitt*, 116 Idaho 285, 290, 775 P.2d 599, 604 (1989). Delay necessary to obtain witness testimony is not the type of prejudice that is relevant to this inquiry. As the Supreme Court stated, "[A] valid reason, such as a missing witness, should serve to justify appropriate delay." *Barker v. Wingo,* 407 U.S. 514, 531 (1972).

Defendant also argues that he was prejudiced by the delay because this evidence should not have been admitted. Defendant did not object to the evidence. Whether that evidence would have been admissible had there been a proper objection is not before us on appeal.

---

[5] By the time of trial, Child was six years old.

9

Considering the four factors, we conclude that Defendant's rights to a speedy trial under the State and Federal Constitutions were not violated.

## IV.

### Did the District Court Deprive Defendant of
### His Constitutional Right to Confront His Accuser?

At the pretrial conference on May 14, 2008, Defendant stated that he wanted to exercise his right to represent himself and that he "would like to be qualified on that as soon as possible, as far as competence." The court directed the court clerk to retrieve a book that apparently listed questions to ask in order to insure that there was a knowing and intelligent waiver of the right to counsel. While waiting for the clerk to return, the court asked the prosecutor if he wished to exercise the right of a victim witness to testify at a remote location, presumably pursuant to the Uniform Child Witness Testimony by Alternative Methods Act, I.C. §§ 9-1801 to 9-1808. When the prosecutor answered that he did not, the court stated: "I just have a little bit of concern. If the defendant is going to represent himself, it's a bit unusual and perhaps creates a difficult situation if the alleged perpetrator is cross-examining the alleged victim who is a child of this age. I'm a little uneasy about that." The prosecutor responded, "I appreciate the Court bringing that to the State's attention, because I do think that the Court is correct, that that would place the victim witness in this case in a precarious situation by being examined by the accused." The court then examined Defendant concerning his request to represent himself and concluded that Defendant made that choice knowingly, intelligently, and voluntarily. At the conclusion of the hearing, the prosecutor stated that he wanted to place the court on notice that the State would like the examination of the Child to be done at a remote location. The court responded that it would review the statute and they could address that.

On June 10, 2008, the State filed a motion to prohibit Defendant from personally cross-examining Child and to have Defendant's standby counsel conduct the cross-examination. If the court denied that motion, the State requested as an alternative that Defendant be excluded from visual contact with Child and that cross-examination be conducted via audio technology. The motion was argued on July 2, 2008, and on August 28, 2008, the court issued its order stating that Child's testimony would be taken by alternative means outside the courtroom and that Defendant's standby counsel would conduct the cross-examination by reading questions

10

prepared by Defendant. The court later entered an amended order specifying that Child would testify by closed circuit television from another room in the courthouse and that Mother, a victim witness coordinator, and a bailiff could be present in that room. It appears that Child testified by one-way closed circuit television, so that those in the courtroom could see Child on the television monitor, but Child could not see who was in the courtroom. Prior to Child's examination, the court also ordered that Defendant was not to speak directly to the court or Child during Child's testimony. If Defendant had any objection to testimony or to the prosecutor's questions, he was to reach over and touch the arm of his standby counsel.

Defendant asserts that having child testify over closed circuit television violated Defendant's right of confrontation. However, he did not preserve that issue for appeal. At the hearing on July 2, 2008, the prosecutor proposed either that Child testify by closed circuit television or that cross-examination be conducted by Defendant's standby counsel asking questions written out by Defendant. In response, Defendant stated: "The defense does not object to the identity of the defendant being concealed from the witness. To ease the witness's testimony, they can either alter my voice and [sic] not show myself to the witness." He then objected to not being permitted to conduct cross-examination by personally questioning Child as opposed to having to write out questions to be asked by his standby counsel. In the context of the two options proposed by the prosecutor, the Defendant's response was that he did not object to Child testifying by closed circuit television. Therefore, he cannot now raise that issue on appeal.

Defendant also asserts that prohibiting him from conducting the cross-examination violated his right of confrontation. The Confrontation Clause of the United States Constitution includes the right to cross-examine one's accusers. *State v. Hooper*, 145 Idaho 139, 176 P.3d 911 (2007) (holding that it was error to admit a video-taped interview of an alleged child victim of sexual abuse because the defendant was deprived of the right to cross-examine the child). The only person who could testify to the alleged sexual abuse was Child. Requiring Defendant to write out questions to be asked by someone else in order to cross-examine Child is a significant impairment of the right of confrontation. As Defendant argued in opposition to that proposal:

> And as far as I have to write down the question and then give it him, plus process it, what I want to ask. And that's while he's asking another question. And then I'm losing track of what's happening while he's speaking to the witness, and I'm not watching the witness to see if he's—his body language.

As anyone who has conducted cross-examination would know, one must be able to listen to the answer and then, especially with young child, be able to reword the question or come up with another question based upon the answer. Cross-examination is often a fluid process, and the person forming the questions must be able to concentrate on the answers and what further questions are necessary to elicit the desired information.

One result of the procedure required by the district court is that it would extend the time it would take to cross-examine Child. This is particularly significant with a young child who may have a short attention span. During direct examination, the prosecutor asked, "[Child], can you pay attention over here? I know you want to color the Incredible Hulk. Can you pay attention to what I'm saying just for a second?"

Soon into the cross-examination, Defendant's standby attorney told the court that Defendant wanted to refresh Child's memory with portions of the preliminary hearing transcript. When the court responded that Child could not read, Defendant's standby counsel stated that Defendant wanted to make a motion. The court called a recess, and Defendant stated to the court that Defendant had previously filed a motion asking to have someone available to read portions of the transcript to Child for impeachment purposes and that the court had stated there would be someone who could do that. The court responded that at some point Defendant could put in Child's prior testimony for impeachment, but not now. When standby counsel asked the court how they would be able to impeach Child, the court told Defendant, "[Child's] attention span has about had it, and we're going to get this done." The court then said that if there is a prior inconsistent statement by Child, Defendant could offer that later. The court added: "We're not going to do it now, and we're not going to do it while the child's on the stand. So let's get on with questions, finish him up and get him out of here." After further discussion about how Defendant could present Child's testimony from the preliminary hearing, the court again admonished Defendant that the court was not going to allow extensive cross-examination of Child. Defendant answered, "Okay. I'll do my best to cut it short." Standby counsel resumed cross-examination of Child, and after Child answered "No" to a series of questions about whether he remembered anything about the day they were talking about, standby counsel stated: "[Child], can you sit up for just a minute? We're almost done buddy. You're doing really good." After some further questioning, Child fell asleep.

We need not decide the circumstances that would permit a court to prevent a pro se defendant from personally cross examining the alleged child abuse victim. In *Maryland v. Craig*, 497 U.S. 836 (1990), the Supreme Court held that "where necessary to protect a child witness from trauma that would be caused by testifying in the physical presence of the defendant, at least where such trauma would impair the child's ability to communicate, the Confrontation Clause does not prohibit [having the child testify by one-way closed circuit television]." *Id*. at 857. The Court added, "the Confrontation Clause requires the trial court to make a specific finding that testimony by the child in the courtroom *in the presence of the defendant* would result in the child suffering serious emotional distress such that the child could not reasonably communicate." *Id*. at 858 (emphasis in original).

If, in order to have a child testify by closed circuit television, the Confrontation Clause requires a finding that the child testifying in the presence of the defendant would result in the child suffering serious emotional distress such that the child could not reasonably communicate, then there must be a similar finding that such trauma would result merely from hearing the defendant's voice in order to prohibit a defendant from personally cross-examining the child while the child is on closed circuit television. In this case, the district court found that there was clear and convincing evidence that Child would suffer serious emotional trauma that would substantially impair Child's ability to communicate if he were to testify in the presence of Defendant. On that basis, the court ordered that Child would testify on closed circuit television. The court then assumed that Child would suffer similar trauma if he merely heard Defendant's voice. Because there are no facts supporting the first finding, there are likewise no facts supporting the assumption.

There was no expert testimony presented regarding the effect, if any, upon Child if he testified in the presence of Defendant. In its order, the court wrote that the finding was based upon Mother's testimony "that [Child] has suffered from nightmares about Defendant, and [Child] himself has testified that Defendant told [Child] not to tell anyone about the incident." Mother did not testify that Child suffered from nightmares (plural) about Defendant. She testified that during the night following the alleged incident, Child awakened at about 4:30 a.m. and said he had a nightmare about Defendant. There was no evidence that he had any other nightmares regarding Defendant during the ensuing year until trial. Likewise, Child did not testify that Defendant told him not to tell anyone about the incident. Rather, Child testified during the preliminary hearing that Defendant put

13

his hand over Child's mouth while they were in the bedroom because Defendant did not want anyone to know.  In addition, Child testified in the presence of Defendant during the preliminary hearing, and there is no contention that Child was unable to communicate or that he suffered trauma while testifying.  Since there was no evidence supporting the use of closed-circuit television, there was clearly no evidence supporting the order preventing Defendant from personally cross-examining Child.  There was also no evidence indicating that if Defendant were permitted to conduct the cross-examination, he would seek to intimidate or embarrass Child or otherwise abuse the right of cross-examination.  If he did so, the Court could take appropriate action.  The district court infringed upon Defendant's right to cross-examine Child.

## V.

## Did the District Court Infringe upon Defendant's Constitutional Right to Represent Himself by Requiring that He Write Down Any Questions He Had for the Alleged Victim and Have Standby Counsel Read Them?

Article 1, section 13, of the Idaho Constitution provides that "[i]n all criminal prosecutions, the party accused shall have the right . . . *to appear and defend in person* and with counsel."  (Emphasis added.)  Likewise, the Sixth Amendment to the United States Constitution guarantees the right of self-representation.  *Faretta v. California*, 422 U.S. 806, 819 (1975).  *Faretta* dealt with the denial of the right of self-representation.  In *McKaskle v. Wiggins*, 465 U.S. 168 (1984), the Supreme Court dealt with infringement upon that right by standby counsel's unsolicited participation.  The Court held that "the pro se defendant is entitled to preserve actual control over the case he chooses to present to the jury" and participation by standby counsel "without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself."  *Id*. at 178.  Although *McKaskle* did not address the issue in this case, there is language in the opinion that is instructive.

> A defendant's right to self-representation plainly encompasses certain specific rights to have his voice heard.  The *pro se* defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial.

*Id*. at 174 (italics in original). Absent evidence that would justify doing so, preventing Defendant from personally conducting the cross-examination infringed upon his right to represent himself.

## VI.

## Did the District Court Err in Instructing the Jury that They Could Find Defendant Guilty Based upon Conduct Not Constituting the Crime of Lewd Conduct?

In the information, the State charged Defendant with lewd conduct "by oral-to-genital contact." In Instruction No. 16, the court instructed the jury as follows:

> In order for the defendant to be guilty of Lewd and Lascivious Conduct, the state must prove each of the following:
>
> 1. On or about December 25, 2007
> 2. in the state of Idaho
> 3. the defendant Jonathan Earl Folk committed an act of oral-genital contact upon or with the body of [Child].
> 4. [Child] was a child under sixteen (16) years of age, and
> 5. the defendant committed such act with the specific intent to arouse, appeal to, or gratify the lust or passions or sexual desires of either of them.
>
> If any of the above has not been proven beyond a reasonable doubt, then you must find the defendant not guilty. If each of the above has been proven beyond a reasonable doubt, you must find the defendant guilty.

During the jury's deliberations, it sent the court a note asking three questions. The first two questions asked whether the jury had to find that Defendant committed an act of oral-genital contact upon Child or whether the jury could simply find that Defendant committed some other act of lewd and lascivious conduct. The jury asked: "Are we proving oral, genital contact, or is this an issue of any lewd and lascivious conduct? Is this a matter of Jon doing oral sex with [Child] or any type of sexual advancement?" The third question asked, if the jury could find the Defendant guilty of some act of lewd and lascivious conduct other than oral-genital contact, what is the definition of lewd and lascivious conduct. The third question was as follows, "If lewd and lascivious is the case, what a [sic] definition of lewd and lascivious."

The correct response to the questions would have been to refer the jury to Instruction No. 16 and to tell the jury that it had to find that Defendant committed an act of oral-genital contact

15

upon Child.  However, the district court did not do so.  It responded with a note stating as follows:  " 'Lewd and Liscivious [sic] Conduct' is the statutory name for a category of sexual touching crimes that include oral-genital contact, genital-genital contact, genital-anal contact, manual-genital contact, manual-anal contact, oral-anal contact, etc.  Here the allegation is oral-genital (mouth to penis) contact, which is, by definition, lewd and lascivious conduct."

Defendant objected to including et cetera in the definition of lewd and lascivious conduct and asked that it be removed from the response.  Defendant's standby counsel added that removing the et cetera "just might narrow it down so that they don't," when he was cut off by the court.  It explained that by using et cetera it was merely trying to track the language of the statute, which states that lewd conduct includes but is not limited to specifically defined conduct.[6]  The court added that the list of conduct in the statute was not exclusive and that the court's response was "merely saying this is some of the things that might apply, and there may be others."

The court's response erred in three respects.  First, Defendant was only charged with lewd conduct by committing oral-genital contact.  Including genital-genital contact, genital-anal contact, manual-genital contact, manual-anal contact, and oral-anal contact in the jury instruction had no relevance to this case.  Although it may have been harmless to have done so, since there was no evidence of any such contact, jury instructions should not include irrelevant information.

Second, the jury asked if it could find Defendant guilty of lewd and lascivious conduct rather than oral-genital contact and, if so, what was the definition of lewd and lascivious conduct.  By defining that term, the court was indicating that it could find Defendant guilty of lewd and lascivious conduct rather than oral-genital contact.  In this case, a valid conviction could be based only upon a finding beyond a reasonable doubt that Defendant engaged in an act of oral-genital contact.

---

[6] The statute, Idaho Code section 18-1508, provides as follows:

> Any person who shall commit any lewd or lascivious act or acts upon or with the body or any part or member thereof of a minor child under the age of sixteen (16) years, including but not limited to, genital-genital contact, oral-genital contact, anal-genital contact, oral-anal contact, manual-anal contact, or manual-genital contact, whether between persons of the same or opposite sex, or who shall involve such minor child in any act of bestiality or sado-masochism as defined in section 18-1507, Idaho Code, when any of such acts are done with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person, such minor child, or third party, shall be guilty of a felony and shall be imprisoned in the state prison for a term of not more than life.

16

Finally, the court's inclusion of "etc." following the list of prohibited conduct reinforced that the jury could find Defendant guilty of conduct other than oral-genital contact. As the court acknowledged, adding the et cetera was "merely saying this is some of the things that might apply, and there may be others." There were no things other than oral-genital contact that could apply in this case. That error was not remedied by informing the jury, "Here the allegation is oral-genital (mouth to penis) contact, which is, by definition, lewd and lascivious conduct." Oral-genital contact was not merely the allegation; it was the conduct that had to be proved beyond a reasonable doubt in order for Defendant to be guilty. It had to be clear to the jury that Defendant could not be found guilty based upon some other conduct, even if the jury believed such conduct could be described as lewd and lascivious because it was some other "type of sexual advancement." By stating that oral-genital contact was merely the allegation and including the et cetera in the response, the court was indicating that Defendant could be guilty based upon some other type of conduct that the jury believed was lewd and lascivious.

The only type of conduct for which Defendant could lawfully have been convicted was oral-genital contact, even if the jury believed that Defendant engaged in other touching with the intent to gratify his lust, passions, or sexual desires. Reviewing the history of the statute and this Court's prior opinions will explain why.

Prior to 1984, the statute provided:

> Any person who shall willfully and lewdly commit any lewd or lascivious act or acts upon or with the body or any part or member thereof of a minor or child under the age of sixteen years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such minor or child, shall be guilty of a felony and shall be imprisoned in the state prison for a term of not more than life.

Ch. 1 § 1, 1973 Idaho Sess. Laws 1, 1.

On July 20, 1983, a federal district judge issued his opinion in *Schwartzmiller v. Gardner*, 567 F.Supp. 1371 (1983), in which he held unconstitutionally vague the wording of Idaho Code § 18-6607, the former lewd conduct statute. He stated:

> *The statute's downfall is its absolute failure to list any of the acts which will subject one to its punishment.* Rather, it vaguely hints of sexual overtones and the terms "lewd" and "lascivious" simply lack such well accepted, commonly understood definitions to give "sufficient warning that men may conduct themselves so as to avoid that which is forbidden". *Rose v. Locke*, 423 U.S. 48, 50, 96 S.Ct. 243, 244, 46 L.Ed.2d 185 (1975). Neither is this a case where the

17

offending language is rendered more explicit because it is combined with some other more precisely defined word.  The Court thus concludes that the plain language of § 18-6607 is insufficiently definite to inform persons of ordinary intelligence what is outlawed and to provide law officers, judges, and juries legally fixed standards to guide enforcement.

567 F.Supp. at 1376 (emphasis added).

The court suggested that the Idaho legislature amend the lewd conduct statute to identify the specific conduct intended to be prohibited.

> As a footnote, the Court adds that many "forward-looking jurisdictions have expressly rejected the antiquated notion that the penal code should not clearly define such acts." *Balthazar v. Supreme Court*, 573 F.2d 698, 701 (1st Cir. 1978).  The phrase "such acts" obviously refers to the specific conduct the legislature seeks to prohibit.  In the future, convictions under § 18-6607 can be constitutionally obtained only against defendants who engage in conduct to which the Idaho Supreme Court has already applied the statute, or which the same Court has specifically said is lewd and lascivious.  Because that is the limit of its present scope, *the Idaho Legislature may decide to rewrite § 18-6607 so that it complies with constitutional minimums of due process*; if so the Court refers that body to 18 U.S.C. § 2253 (1978) as a guide:
> > (2) "sexually explicit conduct" actual or simulated —
> > (A) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
> > (B) bestiality;
> > (C) masturbation;
> > (D) sado-masochistic abuse (for the purpose of sexual stimulation); or
> > (E) lewd exhibition of the genitals or pubic area of any person;
>
> Congress passed that statute and accompanying definitions to enable the District of Columbia to curb sexual exploitation of children.  The language used could not irritate the moral sensibilities of anyone and it complies with all notions of due process by providing fair notice and sufficient legal guidelines for law enforcement.  But that is a determination the legislature must make.

567 F.Supp. at 1379 (emphasis added).

The Idaho legislature took the judge's suggestion, and in 1984 it amended Idaho Code section 18-6607 and redesignated it as section 18-1508.  The amendment was as follows:

> 18-66071508. LEWD CONDUCT WITH MINOR OR CHILD UNDER SIXTEEN. Any person who shall willfully and lewdly commit any lewd or lascivious act or acts upon or with the body or any part or member thereof of a minor or child under the age of sixteen (16) years, including but not limited to, genital-genital contact, oral-genital contact, anal-genital contact, oral-anal contact, manual-anal contact, or manual-genital contact, whether between persons of the

same or opposite sex, or who shall involve a minor or child in any act of bestiality or sado-masochistic abuse or lewd exhibition as any of such acts are defined in section 18-1507, Idaho Code, when any of such acts are done with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such minor or child, shall be guilty of a felony and shall be imprisoned in the state prison for a term of not more than life.

Ch. 63, § 2, 1984 Idaho Sess. Laws 112, 112-13.

As amended, the statute criminalized certain conduct, "including but not limited to" specifically defined bodily contact. In *State v. Kavajecz*, 139 Idaho 482, 80 P.3d 1083 (2003), we addressed whether touching or kissing the chest of a prepubescent girl constituted lewd conduct. This Court held that it did not because the type of conduct included in the phrase "including but not limited to" must be the conduct of a like or similar class or character to the types of conduct specifically listed. *Id*. at 486-87, 80 P.3d at 1087-88.

In this case, Defendant was charged with lewd conduct by committing oral-genital contact upon Child. The instructions to the jury must match the allegation in the charging document as to the means by which a defendant is alleged to have committed the crime charged. *State v. Hopper*, 145 Idaho 139, 147, 176 P.3d 911, 919 (2007). Otherwise, there can be a fatal variance between the jury instructions and the charging document. Also, the jury instruction must not permit the defendant to be convicted of conduct that does not constitute the type of crime charged.

In this case, there was testimony from Mother that, when she entered the bedroom, she saw Child lying on his back on the bed and Defendant kneeling down in front of Child with Child's legs around Defendant and his hands on Child's hips. Defendant testified that just prior to Mother walking into the bedroom, he had been tickling Child's feet and belly. If the jury believed that Defendant was intending to gratify his lust, passions, or sexual desires, which it obviously did, the jury could have found Defendant guilty based upon this type of touching, due to the inclusion of et cetera in the instruction defining lewd and lascivious conduct. This type of physical contact would not constitute the crime of lewd conduct, although it may have constituted attempted lewd conduct had the jury been so instructed. Thus, the jury instruction would have permitted the jury to find Defendant guilty of conduct that does not constitute the crime of lewd conduct.

## VII.

### Conclusion.

For the above reasons, we vacate the judgment of conviction and jury verdict, and we remand this case for further proceedings that are consistent with this opinion.

Justices BURDICK, J. JONES, W. JONES and HORTON **CONCUR.**