**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51026**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **Filed: March 14, 2025** |
| Plaintiff-Respondent, | ) | |
| | ) | **Melanie Gagnepain, Clerk** |
| v. | ) | |
| | ) | **THIS IS AN UNPUBLISHED** |
| HUGO VAZQUEZ GONZALEZ, | ) | **OPINION AND SHALL NOT** |
| | ) | **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bingham County. Hon. Darren B. Simpson, District Judge.

Judgment of conviction for two counts of lewd conduct with a child under the age of sixteen years, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

Hugo Vazquez Gonzalez appeals from his judgment of conviction for two counts of lewd conduct with a child under the age of sixteen years. Vazquez Gonzalez contends the district court committed fundamental error by creating a fatal variance between the charging document and the jury instructions on the alleged lewd conduct charges. Vazquez Gonzalez also argues the district court committed reversible error by denying his motion for a mistrial after the jury heard improper testimony.[1] The State argues that Vazquez Gonzalez invited any error in the jury instructions, or alternatively, the jury instructions did not create a fatal variance; thus, there is no fundamental

---

[1] In his appellant's brief, Vazquez Gonzalez also argued the district court committed fundamental error by improperly instructing the jury on the elements constituting lewd conduct such that the jury could find Vazquez Gonzalez guilty based on acts that did not constitute lewd conduct. That issue was subsequently withdrawn and is not at issue on appeal.

1

error.  Finally, the State argues the district court did not err in denying Vazquez Gonzalez's motion for a mistrial because the curative instruction corrected any potential prejudice.  For the following reasons, we affirm the judgment of conviction.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The State charged Vazquez Gonzalez with two counts of lewd conduct with a child under the age of sixteen years in violation of Idaho Code § 18-1508.  The information listed the acts giving rise to the two counts:

> That Hugo Vazquez Gonzalez, on or between June 1, 2021 to June 30, 2022 in the County of Bingham, State of Idaho, did willfully and lewdly, commit a lewd and lascivious act upon the body of a minor, [victim], under the age of sixteen years, to-wit: of the age of 13 years, by kissing her on the lips, touching her breasts and penetrating her vagina with his penis with the intent to appeal to, arouse and gratify the sexual desire of the Defendant and said minor.

Prior to trial, both parties submitted proposed jury instructions.  The State's proposed elements instruction read, in relevant part, "the defendant [Gonzalez Vazquez] committed an act of genital-genital contact [or] oral-genital contact [or] manual-genital contact [or] any other lewd or lascivious act upon or with the body of [victim]."  Gonzalez Vazquez's proposed instruction read, in relevant part, "the defendant [Gonzalez Vazquez] committee [sic] an act of genital-genital contact and manual-genital contact or any other lewd or lascivious act upon or with the body of [victim]."  Jury instruction numbers 13 and 18 contained the elements for the acts charged in Count I and Count II, respectively.  The language was identical in instructions 13 and 18 and read, in relevant part, "the defendant [Vazquez Gonzalez] committed an act of genital-genital contact or oral-genital contact or manual-genital contact or any other lewd or lascivious act upon or with the body of [victim]."

Neither party objected to these instructions, or to any of the district court's proposed instructions.  During the trial, the victim testified and described a series of sexual interactions between Vazquez Gonzalez and herself, beginning when she was twelve years old and occurring for the last time when she was nearly fourteen years old.  These interactions included manual-genital contact, genital-genital contact, and oral-genital contact.  The victim also testified about the frequency of the acts.

At the final jury instruction conference, the district court and counsel reviewed the proposed jury instructions and made modifications.  Jury instruction number 13 was modified to

2

remove the word "lascivious" in the title of the instruction because the district court noticed "in the Information that the Information simply said 'lewd conduct with a minor under 16' so we took out 'and lascivious.'" The district court also changed element number five in instruction number 13 regarding the defendant's specific intent when committing the act; that change is not at issue in this appeal. Similar corrections--changing "lewd and lascivious conduct" to "lewd conduct"--were made to jury instructions 15, 17, and 18. The final version of jury instruction 13 read, in relevant part, "the defendant [Vazquez Gonzalez] committed an act of genital-genital contact or oral-genital contact or manual-genital contact or any other lewd or lascivious act upon or with the body of [victim]."

The jury found Vazquez Gonzalez guilty on two counts of lewd conduct with a child under the age of sixteen years. Vazquez Gonzalez appeals.

## II.

## STANDARD OF REVIEW

The existence of an impermissible variance between a charging instrument and the jury instructions is a question of law which the appellate court freely reviews. *State v. Sherrod*, 131 Idaho 56, 57, 951 P.2d 1283, 1284 (Ct. App. 1998).

When a defendant alleges that a constitutional error occurred at trial and the alleged error was not followed by a contemporaneous objection, the claim of error must be reviewed under the fundamental error doctrine. *State v. Miller*, 165 Idaho 115, 119, 443 P.3d 129, 133 (2019). In order to obtain relief under the fundamental error doctrine, the defendant must demonstrate three things. First, the defendant must show that one or more of the defendant's unwaived constitutional rights were violated. *Id.* Second, the error must be clear and obvious, meaning the record must demonstrate evidence of the error and evidence as to whether or not trial counsel made a tactical decision in failing to object. *Id*. Third, the defendant must demonstrate that the error affected the defendant's substantial rights, which means the error identified in the first and second prongs of the test actually affected the outcome of the trial. *Id.* at 119-20, 443 P.3d at 133-34.

In criminal cases, motions for mistrial are governed by Idaho Criminal Rule 29.1. A mistrial may be declared upon motion of the defendant, when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial. I.C.R. 29.1(a). Our standard for reviewing a district court's denial of a motion for mistrial is well established:

> The question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer. The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*State v. Urquhart*, 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct. App. 1983).

## III.

## ANALYSIS

Vazquez Gonzalez argues that jury instructions 13 and 18 created a fatal variance between the charging document and those instructions. The State argues there is no constitutional violation because Vazquez Gonzalez invited any error in the jury instructions and, alternatively, even if there was a variance, it was not fatal. Vazquez Gonzalez also argues the district court erred when it denied his motion for a mistrial because the jury heard inadmissible testimony about his custody status and exercise of his right to remain silent. The State argues the district court properly denied the motion for mistrial because the court issued a curative instruction following the inadmissible testimony and the inadmissible evidence did not create an overwhelming probability that the jury was unable to follow the instruction nor was the testimony devastating to the defense.

## A.     Invited Error

The State argues that any variance in the jury instructions was invited by Vazquez Gonzalez because Vazquez Gonzalez's proposed jury instructions specified acts in addition to genital-genital contact. Vazquez Gonzalez argues the error was not invited because, although his proposed instructions included the general language "and any other lewd or lascivious act" as to the specifically alleged acts, his proposed instruction required "oral-genital and manual-genital" contact, which is a conjunctive act rather than a disjunctive act, and thus, is not the same instruction as the one provided by the district court.

The doctrine of invited error applies to estop a party from asserting an error when that party's conduct induces the commission of the error. *State v. Atkinson*, 124 Idaho 816, 819, 864 P.2d 654, 657 (Ct. App. 1993). The purpose is to prevent a party who caused or played an important role in prompting the trial court to take action from later challenging that decision on

4

appeal. *State v. Barr*, 166 Idaho 783, 786, 463 P.3d 1286, 1289 (2020). In short, invited errors are not reversible. *State v. Gittins*, 129 Idaho 54, 58, 921 P.2d 754, 758 (Ct. App. 1996).

Vazquez Gonzalez's proposed jury instructions stated, in relevant part, "the defendant Hugo Gonzalez Vazquez [sic] committee [sic] an act of genital-genital contact *and* manual-genital contact *or* any other lewd or lascivious act upon or with the body of [victim]." (Emphasis added.) The instructions given to the jury stated, "the defendant, Hugo Vazquez Gonzalez, committed an act of genital-to-genital contact *or* oral-genital contact *or* manual-genital contact *or* any other lewd *or* lascivious act upon or with the body of [victim]." (Emphasis added.) The notable difference between the proposed instructions is the use of the words "and" and "or." "The word 'or' is a 'disjunctive particle used to express an alternative or to give a choice of one among two or more things.'" *State v. Cota-Medina*, 163 Idaho 593, 600, 416 P.3d 965, 972 (2018) (quoting *Markel Int'l Ins. Co., Ltd v. Erekson*, 153 Idaho 107, 110, 279 P.3d 93, 96 (2012)). The word "and" in a legal context combines items. CONJUNCTIVE/DISJUNCTIVE CANON, Black's Law Dictionary (12th ed. 2024) (stating that, in a legal instrument, *and* joins a conjunctive list to combine items, while *or* joins a disjunctive list to create alternatives). In this context, the use of the word "and" in Vazquez Gonzalez's proposed instructions required conjunctive rather than disjunctive acts, which would require the jury to find Vazquez Gonzalez committed both acts to be found guilty. In contrast, in the district court's instructions, the exclusive use of "or" is disjunctive, meaning any single listed act would satisfy the requirement. Thus, Vazquez Gonzalez's proposed instructions created a narrower category of offense, and he did not invite the error as the State contends. However, although the error was not invited, the language used indicates that Vazquez Gonzalez was aware that acts other than genital-genital conduct that met the statutory definition of lewd conduct could provide a basis upon which he could be convicted.

## B.    Variance Between Charging Document and Jury Instructions

Vazquez Gonzalez contends there was a fatal variance between the charging document and jury instructions 13 and 18, resulting in a due process violation. Vazquez Gonzalez argues the variance allowed the jury to find him guilty on uncharged acts of lewd conduct. The State argues that, although there is a variance between the information and jury instructions 13 and 18, the error does not rise to the level of a constitutional violation because the variance did not mislead or embarrass Vazquez Gonzalez in the preparation of his defense. The State argues that because Vazquez Gonzalez proposed instructions containing additional definitions of lewd conduct, he had

notice of the other acts listed in instructions 13 and 18. Vazquez Gonzalez concedes he did not object to the jury instructions.

The issue presented requires a two-part inquiry. The first question is whether there is a variance between the information charging Vazquez Gonzalez with two counts of lewd conduct with a minor under sixteen and instructions 13 and 18. *See State v. Brazil*, 136 Idaho 327, 329, 33 P.3d 218, 220 (Ct. App. 2001). Second, if a variance exists, the question is whether the variance rises to the level of prejudicial error requiring reversal of the conviction. *Id.*

A variance exists when the instructions to the jury do not match the allegation in the charging document as to the means by which a defendant is alleged to have committed the crime charged. *State v. Folk*, 151 Idaho 327, 342, 256 P.3d 735, 750 (2011). A variance between a charging instrument and a jury instruction is fatal and necessitates reversal only when it deprives the defendant of the right to fair notice or leaves him or her open to the risk of double jeopardy. *State v. Windsor*, 110 Idaho 410, 417-18, 716 P.2d 1182, 1189-90 (1985); *Brazil*, 136 Idaho at 330, 33 P.3d at 221. Put another way, a variance is fatal if it amounts to a constructive amendment. *State v. Jones*, 140 Idaho 41, 49, 89 P.3d 881, 889 (Ct. App. 2003). A constructive amendment occurs if a variance alters the charging document to the extent the defendant is tried for a crime of a greater degree or a different nature. *State v. Wolfrum*, 145 Idaho 44, 47, 175 P.3d 206, 209 (Ct. App. 2007); *Jones*, 140 Idaho at 49, 89 P.3d at 889; *State v. Colwell*, 124 Idaho 560, 566, 861 P.2d 1225, 1231 (Ct. App. 1993). When a constructive amendment occurs, the defendant is deprived of fair notice and is misled or embarrassed in the preparation or presentation of his defense. *Windsor*, 110 Idaho at 418, 716 P.2d at 1190. A variance is not fatal if the defendant had notice of it or was not misled or surprised in preparation of his defense. *Miller*, 165 Idaho at 120, 443 P.3d at 134.

The parties agree that there is a variance between the information and jury instructions 13 and 18. Thus, this Court must determine whether the variance is "fatal" because it rises to the level of prejudice requiring the reversal of conviction. Vazquez Gonzalez contends the variance between the charging document, which only stated genital-genital contact, and the jury instructions, which alleged genital-genital contact, manual-genital contact, or oral-genital contact, created a fatal variance and cites *State v. Folk*, 151 Idaho 327, 256 P.3d 735 (2011), as support. Folk was charged only with oral-genital contact with a minor. *Id.* at 339, 256 P.3d at 747. During deliberations, the jury asked the court three questions. First, the jury asked whether it had to find

6

that Folk committed an act of oral-genital contact upon the victim, asking: "Are we proving oral, genital contact, or is this an issue of any lewd and lascivious conduct?" *Id*. Next, the jury asked if it could find Folk committed some other act of lewd and lascivious conduct, asking, "Is this a matter of [Folk] doing oral sex with [Child] or any type of sexual advancement?" *Id*. The third question asked if the jury could find Folk guilty of some lewd or lascivious act other than oral-genital, and if so, "what a [sic] definition of lewd and lascivious." *Id*. at 340, 256 P.3d at 748. The district court responded with a note stating:

> "Lewd and Liscivious [sic] Conduct" is the statutory name for a category of sexual touching crimes that include oral-genital contact, genital-genital contact, genital-anal contact, manual-genital contact, manual-anal contact, oral-anal contact, etc. Here the allegation is oral-genital (mouth to penis) contact, which is, by definition, lewd and lascivious conduct.

*Id*.

The Idaho Supreme Court found the district court erred in two ways with respect to this jury instruction. First, because Folk was only charged with lewd conduct by oral-genital contact, "including genital-genital contact, genital-anal contact, manual-genital contact, manual-anal contact, and oral-anal contact in the jury instruction had no relevance to [his] case. Although it may have been harmless to have done so, since there was no evidence of any such contact, jury instructions should not include irrelevant information." *Id*. Second, because the jury asked if it could find [Folk] guilty of conduct other than the oral-genital conduct, when the district court provided a definition that included alternate ways in which lewd conduct could occur, "the court was indicating that it could find [Folk] guilty of lewd and lascivious conduct rather than oral-genital contact. In [Folk's] case, a valid conviction could be based only upon a finding beyond a reasonable doubt that [Folk] engaged in an act of oral-genital contact." *Id*. As a result, the Supreme Court vacated Folk's judgment of conviction. *Id.* at 342, 256 P.3d 750.

The holding in *Folk* was revisited in *Miller*. In *Miller*, the charging document alleged Miller committed injury to a child when "Miller 'willfully caused or permitted the child to be placed in a situation that its person or health may be endangered . . . by driving an automobile, with the child as a passenger, in an aggressive or reckless manner and while eluding law enforcement.'" *Id*. at 121, 443 P.3d at 135. The jury instruction read: "The Defendant wilfully [sic] caused or permitted the child to be placed in a situation that may have endangered the child's person or health." *Id*. Miller argued that the charging document:

7

> Alleged Miller committed injury to a child by "*driving an automobile*, with a child as a passenger, in an aggressive or reckless manner while eluding law enforcement" whereas Jury Instruction No. 21 did not mention an automobile and instead stated Miller was guilty of the crime if he willfully caused the child to be "*placed in a situation* that may have endangered the child's person."

*Id*. During closing argument, the prosecutor stated that Miller stopped in a field and let the child run out of the vehicle knowing there was a dangerous situation because law enforcement was there and one of the officers had drawn his service weapon. *Id*. Miller argued that the prosecutor's closing statement, when combined with the jury instruction, created a new means of committing injury to a child because the jury could convict him for creating a situation in which the officer drew his weapon in the child's presence. According to Miller, this new means of committing injury to a child created a fatal variance. *Id*.

The Idaho Supreme Court reiterated that variances are not fatal when the defendant is on notice of the variant theory or if the defendant is not surprised or misled in his defense. *Id.* The Court concluded Miller was on notice that the State might address the child running out of the vehicle after it stopped. *Id*. The Court noted there was nothing in the charging document that indicated the State's argument was limited to events that occurred while the vehicle was moving. *Id*. Instead, the Court held that the fact of the child running from the vehicle was directly related to Miller's act that "willfully caused or permitted the child to be placed in a situation that its person or health may be endangered . . . by driving an automobile, with the child as a passenger, in an aggressive or reckless manner and while eluding law enforcement." *Id*.

The Court distinguished *Miller* from *Folk* for several reasons. First, in *Folk*, the variance permitted Folk to be convicted based on acts that were not covered by the lewd conduct statute, but in *Miller*, nothing was alleged that would have allowed Miller to be convicted based on acts not encompassed within the injury to child statute. *Id*. at 121-22, 443 P.3d at 135-36. Second, because Miller's counsel responded to witness testimony about the child running from the car, he was on notice that the child's actions outside of the vehicle may be addressed. *Id.* at 122, 443 P.3d at 136. During defense counsel's closing argument, he rebutted the allegation in the prosecutor's closing statement and presented a defense regarding the allegation. *Id*. Ultimately, the Court held that because the variance was not fatal, Miller could not establish that his due process rights were violated and, as a result, he failed to meet the first prong of the fundamental error analysis. *Id.* A failure to satisfy the first prong of the fundamental error analysis obviated the need to address the remaining two prongs, and Miller was unable to show fundamental error. *Id*.

*State v. Bernal*, 164 Idaho 190, 427 P.3d 1 (2018), is also instructive.  In *Bernal*, the charged conduct was attempted assault, but the jury instruction included the theory of assault by threat.  *Id.* at 195, 427 P.3d at 6.  The Supreme Court held that the variance between the charging document and the jury instruction was not fatal because Bernal had notice of the variance and that the State might prove its case on the theory included in the jury instruction.  *Id.*

In this case, the trial testimony referenced some acts not constituting lewd conduct.  However, there was also testimony about specific incidents of lewd conduct, which included genital-genital, oral-genital, and manual-genital acts.  The victim described the first incident of touching when she was twelve years old, which began with Vazquez Gonzalez touching her breasts but escalated to manual-genital contact.  The victim described an incident of oral-genital contact on her thirteenth birthday, where Vazquez Gonzalez asked her to perform oral sex on him.  The victim stated that Vazquez Gonzalez began committing genital-genital contact with her approximately two weeks after the first sexual encounter.  Vazquez Gonzalez would withdraw or check her out of school early, bring her home, and take her into his bedroom.  She also described the last incident occurring a year later, just prior to involving law enforcement, where Vazquez Gonzalez's sexual touching escalated to genital-genital contact.  The victim indicated the sexual interactions were a near daily occurrence between the first and the last incident, and every time Vazquez Gonzalez checked her out of school, it was to sexually abuse her.  The victim described a pregnancy scare she had when she was thirteen years old.  Vazquez Gonzalez purchased a pregnancy test for her and told her that if she ever got pregnant, he was going to take her to Mexico.  The victim's siblings also testified and described hearing Vazquez Gonzalez's bed hitting the wall during the night and finding used condoms and the pregnancy test in his room.  A sexual assault nurse examiner testified about a physical exam she performed on the victim and indicated the exam was consistent with the explanations the victim provided.  The forensic lab technician testified about the results of the physical exam, stating low levels of male DNA were detected on the vaginal and external genitalia swabs.

This case, like *Miller* and *Bernal*, is distinguishable from *Folk*.  Unlike in *Folk*, Vazquez Gonzalez never objected to any instruction, let alone instructions 13 and 18; there is no evidence that the jury sought to convict Vazquez Gonzalez on any basis other than genital-genital contact; Vazquez Gonzalez was not tried for a crime of greater degree or of a different nature than charged; Vazquez Gonzalez does not argue he was surprised or misled by the instructions; and Vazquez

9

Gonzalez has not pointed to anything in the record to show his defense was adversely affected by the jury instructions given.

For purposes of his defense, Vazquez Gonzalez does not point to anything in the record to support a claim that he did not have notice of the variance or was misled or embarrassed in the preparation or presentation of his defense. Instead, the record shows Vazquez Gonzalez reviewed the proposed instructions, had notice of the different acts listed in instructions 13 and 18, and submitted jury instructions that included language that Vazquez Gonzalez committed "an act of genital-genital contact and manual-genital contact or any other lewd or lascivious act upon or with the body of [victim]." That language indicates that Vazquez Gonzalez was aware that any of the statutory bases of lewd conduct were at issue in the case. Vazquez Gonzalez reviewed the proposed jury instructions, was present during the jury instruction conference, and was present when the instructions were read to the jury. Despite this, Vazquez Gonzalez never objected to instructions 13 or 18. In fact, when directly asked if he had any objection to the instructions, defense counsel said, "No, no objection, Your Honor."

Additionally, the evidence at trial discussed at least two incidents of genital-genital contact and the prosecutor in closing arguments emphasized to the jury that it had to find genital-genital contact occurred for Vazquez Gonzalez to be found guilty on each count. A review of the State's closing argument demonstrates that the prosecutor focused only on the charged genital-genital contact, did not reference any other kind of lewd conduct, and did not invite the jury to convict Vazquez Gonzalez on any type of act other than the one charged. A similar review of the record indicates the jury did not send any questions to the judge similar to the questions submitted in *Folk*, thus, there is no reason to believe the jury found Vazquez Gonzalez guilty of any act other than the acts of genital-genital contact charged in the information.

Vazquez Gonzalez has failed to demonstrate a fatal variance and thus, does not establish the first prong of the fundamental error analysis. Failure to satisfy the first prong of the fundamental error analyses obviates the need to address the remaining two prongs, and Vazquez Gonzalez is unable to show fundamental error.

C.      **Motion for Mistrial**

Vazquez Gonzalez contends the district court erred in denying his motion for a mistrial because of the inadmissible testimony by Detective Kent referencing Vazquez Gonzalez's custody status and exercise of his right to remain silent. Vazquez Gonzalez argues the curative instruction

issued by the district court following the testimony was insufficient to overcome the prejudice caused and deprived him of a fair trial. The State contends that the inadmissible statements by Detective Kent were not intentionally solicited and the curative instruction by the court resolved any potential prejudice that resulted. Further, although the jury heard improper testimony, the State argues the effect was minimally prejudicial because of the nature of the charged crime and the trial testimony; therefore, the district court properly denied the motion for a mistrial.

The specific bases for Vazquez Gonzalez's motion for mistrial included two comments from Detective Kent. The first was when Detective Kent testified that, after he became involved with the case, he spoke with Vazquez Gonzalez "on the phone multiple times and once after he was incarcerated." The second was Detective Kent's response when asked if he spoke with Vazquez Gonzalez in person. Detective Kent answered, "No. I attempted to speak with him in person at his residence, and he was unwilling to speak with us." He continued, "He was not there, or he wouldn't answer the door. I don't know which." At the conclusion of the direct examination, the district court instructed the jury to disregard the testimony, stating:

> You heard testimony that the defendant had been incarcerated. You are instructed that you are to disregard that information. It's not relevant to the guilt or innocence of the defendant in this case, and it should not impact your deliberations in any regard. You also heard the witness testify that the defendant was unwilling to speak with him. Again, it is not relevant. The defendant has the right to remain silent. You're not to use that against him in any fashion, and it should not affect your deliberations in any way. So you're instructed to disregard that as well.

When Vazquez Gonzalez moved for a mistrial the following day, the district court acknowledged that even if the testimony was not intentionally elicited, it was still attributable to the State. The district court noted that Vazquez Gonzalez did not object to the testimony at trial and that it was the court that paused the proceedings out of concern about the testimony. The district court then considered the quantum of evidence presented to the jury at that point, stating:

> But with that evidence, if the jury were to return a verdict at this point, I cannot say that the error that was made here in the testimony that was given was so prejudicial as to affect the verdict in this case. Quite frankly, the way it came in, it was fairly what I'll call benign, for lack of a better word.

The district court denied Vazquez Gonzalez's motion for a mistrial, finding the curative instruction compensated for the error, and the jury seemed to indicate understanding that it could not consider nor draw inferences from the statements. We agree.

11

A defendant is entitled to a fair trial, but not a perfect trial. *State v. Enno*, 119 Idaho 392, 408, 807 P.2d 610, 626 (1991); *State v. Estes*, 111 Idaho 423, 428, 725 P.2d 128, 133 (1986). *State v. Parker*, 157 Idaho 132, 146-47, 334 P.3d 806, 820-21 (2014). We presume that the jury followed the district court's instructions. *See State v. Kilby*, 130 Idaho 747, 751, 947 P.2d 420, 424 (Ct. App. 1997); *State v. Hudson*, 129 Idaho 478, 481, 927 P.2d 451, 454 (Ct. App. 1996). The inadmissible statements by Detective Kent were appropriately handled by the district court when it issued the curative instruction to the jury informing it: (1) of Vazquez Gonzalez's right to silence; (2) that he was entitled to invoke that right; (3) was to disregard the detective's comment; and (4) was to draw no further inferences from the comment. The events which precipitated the motion for mistrial do not represent a reversible error. As the district court noted, given the quantum of evidence presented, the jury's verdict was unlikely to be affected by the error. The district court did not err by denying Vazquez Gonzalez's motion for a mistrial.

## IV.

## CONCLUSION

Vazquez Gonzalez failed to establish fundamental error due to a fatal variance between the charging documents and the jury instructions. Vazquez Gonzalez also failed to establish the district court erred by denying his motion for a mistrial because the curative instruction issued by the district court corrected the potential prejudice from the improper testimony. Therefore, we affirm Vazquez Gonzalez's judgment of conviction.

Judge LORELLO and Judge TRIBE, **CONCUR**.