**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 36819**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2011 Opinion No. 17 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: April 1, 2011 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| ROBERT J. SUTTON, II, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County.  Hon. Steven C. Verby, District Judge.

Judgment of conviction for intimidating a witness, <u>vacated</u> and <u>remanded</u>.

Molly J. Huskey, State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for appellant.  Jason C. Pintler argued.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.  John C. McKinney argued

_____

GRATTON, Chief Judge

Robert J. Sutton, II (Sutton) appeals his judgment of conviction, upon jury verdict, for intimidating a witness, Idaho Code § 18-2604.  Sutton claims the jury instructions regarding the elements of the offense were defective and require vacating the conviction.  We vacate the judgment of conviction and remand.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Sarah Phelps (Phelps) worked as a bartender in Sandpoint where she met Sutton and Mike O'Neil (O'Neil), Sutton's uncle.  Phelps witnessed O'Neil selling methamphetamine to customers at the bar and informed the police.  She agreed to work as a paid informant.  After Phelps concluded a controlled buy of methamphetamine from O'Neil, O'Neil was charged with delivery of a controlled substance.  A preliminary hearing was scheduled for June 18, 2009, at which Phelps was a potential witness.

1

On June 15, 2008, Sutton and his father, Robert Sutton, Sr. (Sutton Sr.), visited Phelps' apartment. Phelps owned a pit-bull terrier that was very protective. She testified that her dog was for protection, and in order to prevent the dog from becoming friendly with strangers she kept him in a separate room when people visited. Phelps testified she put the dog in a separate room on this day and he was barking while the Suttons were there.

On June 15, 2008, an evening phone call was recorded from the jail to the house where Sutton and Sutton Sr. were staying. During the fifteen-minute call, six people talked on the phone, two from the jail and four from the house. The call began with another inmate, "Lefty," calling his friend, Gary Rust, whom the Suttons were living with at the time. Rust stated to Lefty, "Tell [O'Neil] Sara Phelps told on him." When Sutton Sr. began speaking with O'Neil, Sutton Sr. said "Don't say anything on the phone." O'Neil replied "I know." O'Neil said that Rust would talk to Sutton later. When Sutton Sr. stated "I'll do anything I can for you." O'Neil responded, "Tell your fucking kid he already knows who she is." When Sutton came on the phone, O'Neil told him that this is his (O'Neil's) second conviction and he is at risk of being sentenced from seven to life. O'Neil then said, "I have a hearing on the 18th. My preliminary is on the 18th." Thereafter, the following exchange occurred:

| | |
|---|---|
| Sutton: | "I want to know who your . . ." |
| O'Neil: | "You know who." |
| Sutton: | "Well I don't know . . ." |
| O'Neil: | "Bitch." |
| Sutton: | "Just don't say nothing and we'll just talk when I . . ." |
| O'Neil: | "Bitch. That's all I'm going to say. You know what time it is." |
| Sutton: | "I'll come get you and we'll work something out." |
| O'Neil: | "I ain't even worried about it." |
| Sutton: | "I just want to know." |
| O'Neil: | "I want to see the bitch up on the stand. Just so I can look at her and fucking spit." |
| Sutton: | "They won't give the exact day in the newspaper because then they think you'll know who it is." |
| O'Neil: | "I know who it is. The time frame is way too short." |

On June 17, 2008, between 6:30 to 7:00 a.m., Phelps, following her daily routine, took her pit-bull for his morning walk. Before Phelps could stop him, her dog ate two balls of raw hamburger that were left outside her home in the alley. Shortly after returning from the twenty-minute walk, the dog became ill with seizures. Phelps took her dog to a veterinarian and was

instructed to leave him there because he was extremely ill. After leaving her dog, Phelps went to a local bar where she had a number of cocktails and became intoxicated because she was upset that someone would hurt her dog. Phelps returned to her apartment and fell asleep. Phelps awoke to the noise of her French doors hitting the wall and allegedly saw Sutton and Sutton Sr. storm into her apartment. She testified that they came directly at her and stated: "We know that you narked. Michael told us. You're fucked. You're going down." Sutton allegedly touched her cheek with a .45 caliber pistol and then moved the pistol to the corner of her mouth. Phelps did not remember any other statements before the Suttons left and estimated the incident took about two minutes.

Sutton was charged with burglary, aggravated assault, and intimidating a witness. He was also alleged to be a persistent violator. A jury found Sutton guilty of intimidating a witness, acquitted him of aggravated assault, and could not reach a verdict on the burglary charge. Sutton admitted to being a persistent violator of the law. He was sentenced to a unified term of ten years with six years determinate. Sutton appeals.

## II.

## DISCUSSION

Sutton and the State agree that under *State v. Anderson*, 144 Idaho 743, 170 P.3d 886 (2007), the jury instructions given on the elements for intimidation of a witness, I.C. § 18-2604, were in error. Both also agree that, like the defendant in *Anderson*, Sutton failed to object. Sutton argues that *Anderson* requires vacating his conviction. The State contends that Sutton has not demonstrated fundamental error under *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010) and the conviction should be affirmed.

Idaho Code § 18-2604 defines four instances of intimidating a witness. The subsection applicable here criminalizes intimidating witnesses in criminal proceedings prior to their anticipated testimony, stating:

> Any person who, by direct or indirect force, or by any threats to person or property, or by any manner wilfully intimidates, influences, impedes, deters, threatens, harasses, obstructs, or prevents, a witness, including a child witness, or any person who may be called as a witness or any person he believes may be called as a witness in any criminal proceeding or juvenile evidentiary hearing *from testifying freely, fully and truthfully in that criminal proceeding* or juvenile evidentiary hearing is guilty of a felony.

I.C. § 18-2604(3) (emphasis added).

3

In *Anderson*, the defendant was arrested for shoving his wife multiple times. Several days after the incident, Anderson left a voicemail for one of the arresting officers. The officer testified that Anderson stated he was going to "get me on the stand and let people know I'm gay." *Anderson*, 144 Idaho at 745, 170 P.3d at 888. Anderson was charged with misdemeanor domestic battery and harassing a witness, under I.C. § 18-2604(3). At the conclusion of the trial the following intimidation instruction was given:

> YOU ARE INSTRUCTED that the essential elements in Count II of the crime of **HARRASSING** (sic) **A WITNESS** which defendant is charged are:
> 1. On or about the 14th day of January, 2005;
> 2. in the state of Idaho;
> 3. the defendant, **JOHN CORNELL ANDERSON**, did willfully threaten or harass;
> 4. a witness in a criminal proceeding;
> 5. or a witness the defendant believe may be called in a criminal proceeding
> The State has the burden of proving each of these elements by proof beyond a reasonable doubt. If any of the above has not been proven beyond a reasonable doubt, then you must find the defendant not guilty. If each of the above has been proven beyond a reasonable doubt, you must find the defendant guilty.

*Anderson*, 144 Idaho at 748, 170 P.3d at 891. The jury was also instructed that "an act is 'willful' or done 'willfully' when done on purpose. One can act willfully without intending to violate the law, to injure another, or to acquire any advantage." *Id*. Anderson, pro se, did not object to the instructions.

The Court held that the instruction on harassing a witness erroneously omitted the element that the defendant willfully threatened or harassed the witness "from testifying freely, fully and truthfully." *Id*. The Court also noted that the "willfully" instruction exacerbated the error by emphasizing Anderson could be found guilty without finding a specific intent to acquire an advantage. On appeal, Anderson argued the error was fundamental. The Court held that because the instruction omitted an essential element of the crime, Anderson's right to due process was violated and it was a clear instance of manifest injustice that constituted fundamental error. The Court then conducted a harmless error analysis. The State, on appeal, focused on arguing that the error was not fundamental and did not argue the error was harmless. The Court concluded that the State failed to meet its burden to demonstrate the error was harmless. The Court reasoned that the jury could have thought that Anderson called the officer

4

to vent his anger or to irritate or annoy the officer, rather than intimidate him regarding his testimony. *Id*. at 749, 170 P.3d 892.

In this case, Sutton and the State agree that, based on *Anderson*, the elements instructions were erroneous. Jury instruction nineteen, stated:

> In order for the defendant to be guilty of Witness Intimidation, the state must prove each of the following:
> 1. On or about June 17, 2008,
> 2. in the state of Idaho,
> 3. the defendant, Robert James Sutton, II, did wilfully, by use of direct or indirect force and/or threat to Sara Phelps,
> 4. intimidate a witness or a person whom he believed may be called as a witness in a court criminal proceeding.
>
> If any of the above has not been proven beyond a reasonable doubt, you must find the defendant not guilty. If each of the above has been proven beyond a reasonable doubt, then you must find the defendant guilty.

Instruction twenty stated:

> An act is "wilful" or done "wilfully" when done on purpose. One can act wilfully without intending to violate the law, to injury another, or to acquire any advantage.

Sutton, who was represented by an attorney, failed to object to the above jury instruction. The instructions in this case appear to be substantially similar to the instructions in *Anderson*. While in this case the court used the term "intimidate," the *Anderson* instruction used the phrase "threaten or harass." Both sets of instructions seem to imply a requirement that the act be done to prevent the witness from testifying, but neither included it as an express element. The State does not dispute the similarities here with *Anderson*, but argues *Perry* changes the outcome.

In *Perry*, after considerable analysis, the Court stated:

> In summary, where a defendant alleges that an error occurred at trial, appellate courts in Idaho will engage in the following analysis:
> (1) *If the alleged error was followed by a contemporaneous objection at trial*, appellate courts shall employ the harmless error test articulated in *Chapman*. Where the defendant meets his initial burden of showing that a violation occurred, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt that the constitutional violation did not contribute to the jury's verdict. There are two exceptions to this standard:
> > a. Where the error in question is a constitutional violation found to constitute a structural defect, affecting the base structure of the trial to the point that a criminal trial cannot reliably serve its

5

function as a vehicle for determination of guilt or innocence, the appellate court shall automatically vacate and remand.

b. Where the jury reached its verdict based upon erroneous instruction an appellate court shall generally vacate and remand the decision of the lower court. However, in the limited instance where the jury received proper instruction on all but one element of an offense, and "[w]here a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." *State v. Lovelace*, 140 Idaho 73, 79, 90 P.3d 298, 304 (2004). If a rational jury could have found that the state failed to prove the omitted element then the appellate court shall vacate and remand.

(2) *If the alleged error was not followed by a contemporaneous objection*, it shall only be reviewed by an appellate court under Idaho's fundamental error doctrine. Such review includes a three-prong inquiry wherein the defendant bears the burden of persuading the appellate court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) plainly exists (without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision); and (3) was not harmless. If the defendant persuades the appellate court that the complained of error satisfies this three-prong inquiry, then the appellate court shall vacate and remand.

*Perry*, 150 Idaho at 227-28, 245 P.3d 979-80 (emphasis added). The Court concluded: "We find that this analytical approach clarifies our standard of review while adhering to the historic principles underlying Idaho's harmless error and fundamental error doctrines." *Id*.

Despite the summary provided in outline format by the *Perry* Court, Sutton argues that the appropriate standard of review for failing to include an element of the offense in a jury instruction is that stated in subparagraph (1)(b) above, where the Court quotes *Lovelace*. The standard set out in *Lovelace*, 140 Idaho at 79, 90 P.3d at 304, comes from *Neder v. United States*, 527 U.S. 1, 17 (1999). The *Neder* standard states: "where the reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." *Neder*, 527 U.S. at 17. Subparagraph (1) of the *Perry* opinion quoted above sets forth standard for objected-to error and then notes that "[t]here are two exceptions to this standard," one of which is the *Neder* standard set out in subparagraph (1)(b). Sutton asserts that when the Court identified the *Neder* standard as an

6

exception, it meant to identify the applicable standard regardless of whether there was or was not a contemporaneous objection.

We note, first, that in *Neder* the instruction was objected to. *Neder*, 527 U.S. at 6. The *Perry* Court favorably cited the *Neder* standard for reviewing jury instruction error when there is a contemporaneous objection. *Perry*, 150 Idaho at 228, 245 P.3d at 980 (quoting *Lovelace*, 140 Idaho at 79, 90 P.3d at 304 (citing *Neder*, 527 U.S. at 17)). The *Perry* Court was careful to detail the significant distinction between objected-to and unobjected-to error. One of the *Perry* Court's stated purposes in announcing the standards set forth therein was to "reinforce the judicial preference for contemporaneous objections before the trial court." *Id.* at 220, 245 P.3d at 972. Thus, after setting out the standards for objected-to error in subparagraph (1), including its exceptions in subparagraphs (a) and (b), the Court clearly stated that "if the alleged error was not followed by a contemporaneous objection" the three-part analysis in subparagraph (2) applies. The Court made no exceptions in subparagraph (2). Therefore, the Court rejects Sutton's interpretation of *Perry* and will apply the three-prong inquiry for unobjected-to error in jury instructions. Each of the three prongs will be addressed in turn.

**1.    Unwaived constitutional right**

The *Anderson* Court concluded that "the jury instruction omitted an essential element from the felony witness harassment statute, thereby violating Anderson's right to due process." *Anderson*, 144 Idaho at 749, 170 P.3d at 892. That decision compels the conclusion that the instructions in this case constituted an error that violated Sutton's due process rights. The State acknowledges that "Sutton has tentatively shown a violation of his constitutional right to have the jury receive instruction on every element of the crime of witness intimidation." Sutton demonstrated the violation of an unwaived constitutional right.

**2.    Plain error**

For an error to plainly exist, there must not be a need for additional information outside the appellate record. *Perry*, 150 Idaho at 228, 245 P.3d at 980. Requiring error to be "plain" is "synonymous with 'clear' or, equivalently, 'obvious.'" *Id.* at 225, 245 P.3d at 977 (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). Sutton argues that the existence of the *Anderson* case, coupled with the jury instructions in the record, renders the error in this case plain.

7

However, *Perry* further requires demonstration from the record itself that the failure to object was not a matter of tactics or strategy. If that conclusion cannot be drawn from the record, then plain error is not shown and direct review under fundamental error is inappropriate. As *Perry* further states, "[i]f there is insufficient evidence in the appellate record to show clear error, the matter would be better handled in post-conviction proceedings." *Perry*, 150 Idaho at 226, 245 P.3d at 978. The Court concluded there was a reasonable possibility that Perry's failure to object was a strategic decision and additional fact-finding would be necessary to determine defense counsel's motivation. Thus, Perry had failed to demonstrate plain error and the Court concluded the prosecutor misconduct claim could not be reviewed under fundamental error.

The State argues that the error in this case does not plainly exist, because Sutton's failure to object may have been for tactical reasons. The State asserts the instructional error should have been obvious to Sutton by comparing the instruction with I.C. § 18-2604, or reading the *Anderson* opinion. The State hypothesizes that defense counsel knew the instruction was error. The State speculates that Sutton decided not to object because the instructional error was minimal and Sutton could attempt to secure acquittal on his alibi defense, knowing that in the event that he lost he could appeal and claim the instruction was error with the hope of receiving a new trial. The State contends this is exactly the type of "sandbagging" that *Perry*, at 224, 245 P.3d at 976, and *Puckett v. United States*, __ U.S. __, 129 S.Ct. 1423, 1428 (2009), warned against.

First, there is no indication in the record that Sutton knew any more about the law than the State or the trial court, nor is there any evidence or indication that Sutton was attempting to sandbag the court. There is no evidence Sutton presented this instruction to the court. Second, the audio recording from the jail indicates that O'Neil wanted Sutton to do something regarding Phelps, but it is not clear. While the break-in to Phelps' home was temporally related to the preliminary hearing at which Phelps might testify, nothing in her recounting of the statements made by the Suttons directly related to her testifying. With that in mind, a reasonable trial strategist would have wanted the instruction to require the jury to find, beyond a reasonable doubt, that Sutton's actions were expressly related to her potential testimony and for the purpose of intimidating her from "freely, fully, and truthfully" testifying at the preliminary hearing. Counsel could then argue that, because none of the statements attributed by Phelps to the Suttons referred to testimony, the jury could not find, beyond a reasonable doubt, that Sutton's acts were

8

meant to intimidate her from "freely, fully and truthfully" testifying. Indeed, during the jailhouse telephone conversation, O'Neil stated that he wanted Phelps on the witness stand so he could spit on her. If Sutton's purpose for breaking into Phelps' apartment with a pistol was to keep her from testifying, it would seem most likely that he would, in fact, expressly tell her not to testify. Although Sutton was pursuing an alibi defense, nothing precluded an alternative argument to the jury that even if the jury believed Sutton was involved in the incident, by the victim's own testimony, it had nothing to do with her testifying, whether freely, fully or truthfully.

We are left with only the State's speculation that Sutton made a tactical decision not to object. This Court concludes that information outside the record is not necessary to determine that Sutton's failure to object was not a strategic decision.

### 3. Prejudicial error

Sutton has the burden of demonstrating that the error was not harmless. *Perry*, 150 Idaho at 228, 245 P.3d at 980. Sutton must demonstrate that the error affected his substantial rights, meaning that it must have altered the outcome of the trial proceedings. *Id*. at 226, 245 P.3d at 978. Sutton argues that the failure to properly instruct the jury did affect the outcome of the trial. Sutton points to weaknesses in the State's case, including: (1) Phelps' credibility; (2) the jury's failure to convict on the other two counts; and (3) the timeline of events and arguable alibi.

Phelps' credibility was called into question. At the preliminary hearing, Phelps was asked if she was a confidential informant and she answered no. Phelps acknowledged at trial that the statement was false, and that she was a paid informant against O'Neil. She explained that she was confused at that hearing and not sure she had to disclose that she was an informant against O'Neil. On direct examination, Phelps testified she was sure she drank six screwdrivers the morning of July 17, 2008. But when asked if she remembered testifying at the preliminary hearing to having consumed eight screwdrivers, she did not deny having said so, but indicated that six or eight was pretty close. Even though she admitted to being drunk, she was adamant her memory and her identification of the Suttons were correct. When asked if she had purchased methamphetamine from O'Neil, she denied it, but Detective Higbee testified that Phelps had helped him in a controlled purchase from O'Neil. Phelps testified that even though she was concerned for her safety after the incident, she did not seek police protection because she was not

easily spooked; however, Detective Higbee believed Phelps did not promptly notify the police because she did not want to be labeled an informant.

Sutton asserts that based on the aggravated assault acquittal, and the hung jury on the burglary charge, the jury did not believe Phelps' testimony. Sutton argues that the jury, by acquitting him on the aggravated assault charge, did not believe Phelps' testimony that he broke into her apartment and put a gun to her face. In addition, while the jury must have found some interaction, it was not assaultive and a jury instruction that Sutton's actions must have been for the purpose of not just intimidating her, but to intimidate her from testifying "freely, fully and truthfully," would have similarly resulted in acquittal. Finally, Sutton claims his alibi defense enhances the likelihood of an acquittal had the jury been properly instructed. Sutton concludes that any threat made here was the same as in *Anderson* and that the jury might have found that Sutton was expressing his anger to Phelps for informing on O'Neil, not that he was intending to deter her from testifying.

Sutton met his burden of demonstrating that the error was not harmless. Ultimately, this case hinges on Phelps' testimony, which was subject to a number of reasons for the jury to doubt its credibility. She lied at the preliminary hearing. She testified she did not buy methamphetamines from O'Neil and the officer testified otherwise. She was intoxicated. Lastly, although the alleged break-in was temporally related to the date of the preliminary hearing, according to Phelps' testimony, Sutton made no reference to her upcoming testimony against O'Neil, or any desire that she not testify, modify her testimony, or lie. Indeed, even though it can be argued that she was the subject of discussion in the recorded telephone conversation, it is not clear that the thrust of the conversation was to influence her testimony at O'Neil's hearing. Thus, like in *Anderson*, an argument can be made that Sutton's purpose for the alleged break-in was retribution for "narking" as opposed to affecting future testimony. Consequently, we cannot say that the failure of the instruction to require the express tie of Sutton's actions to Phelps "freely, fully and truthfully" testifying did not affect the outcome.

10

## III.

## CONCLUSION

The jury instruction was erroneous and violated an unwaived constitutional right. The error was plain and was not harmless error. The judgment of conviction is vacated and the case is remanded.

Judge LANSING and Judge GUTIERREZ **CONCUR.**