IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 39044

| STATE OF IDAHO, | ) | |
| --- | --- | --- |
| | ) | 2013 Opinion No. 6 |
| Plaintiff-Respondent, | ) | |
| | ) | Filed: January 24, 2013 |
| v. | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| KIM J. DAY, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bingham County.  Hon. William H. Woodland, District Judge.

Judgment of conviction for lewd conduct with a minor under the age of sixteen and being a persistent violator, <u>vacated</u>.

Sara B. Thomas, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge

Kim J. Day appeals from his judgment of conviction for lewd conduct with a minor under the age of sixteen and being a persistent violator.  For the reasons set forth below, we vacate the judgment.

## I.

## FACTS AND PROCEDURE

In 2011, Day was charged with lewd conduct with a minor under the age of sixteen, I.C. § 18-1508, and being a persistent violator, I.C. § 19-2514.  At trial, the alleged victim testified that, while she was in the hot tub with Day, they played a game called "ice wars," which she described as taking ice cubes or snow into the hot tub to try to put "down each other's pants." The victim testified that, on one occasion while playing this game, Day stuck his hand down her bikini bottom and felt around her vagina.  She also testified that, on that same occasion, when she tried to stick snow down Day's swimsuit, he grabbed her elbow and stuck it further down so

1

she felt his penis. A friend of the victim testified that she saw Day put ice into the victim's bikini top and touch her breast. Day denied having ever put his hand into the victim's bikini to feel her vagina or her breast. He further testified that any touching would have been accidental and not sexual in nature. Day also testified that he would never force the victim's hand down his swimsuit to touch his penis because he had cancer in his genitals and, if someone were to touch them, it would cause immense pain.

The state's information charging Day with lewd conduct alleged that Day "had manual to genital contact with [the victim] and/or caused [the victim] to have manual to genital contact with" Day. However, the jury was instructed that, in order for Day to be guilty of lewd conduct, the state had to prove that, with intent to arouse, appeal to, or gratify the lust passions or sexual desires of Day, the victim, or some other person, Day "committed an act or acts of manual-genital contact *or any other lewd or lascivious act* upon or with the body of" the victim (emphasis added). The jury found Day guilty of lewd conduct with a minor under the age of sixteen and Day admitted to being a persistent violator. The district court sentenced Day to a unified term of fifteen years, with a minimum period of confinement of five years. Day appeals.

## II.

## ANALYSIS

Day argues, for the first time on appeal, that he was denied his right to due process because of a fatal variance between the charging document and the jury instructions. The existence of an impermissible variance is a question of law over which we exercise free review. *State v. Alvarez*, 138 Idaho 747, 750, 69 P.3d 167, 170 (Ct. App. 2003); *State v. Sherrod*, 131 Idaho 56, 57, 951 P.2d 1283, 1284 (Ct. App. 1998). A variance may occur where there is a difference between the allegations in the charging instrument and the proof adduced at trial or where there is a disparity between the allegations in the charging instrument and the jury instructions. *State v. Montoya*, 140 Idaho 160, 165, 90 P.3d 910, 915 (Ct. App. 2004). If it is established that a variance exists, we must examine whether it rises to the level of prejudicial error requiring reversal of the conviction. *State v. Brazil,* 136 Idaho 327, 329, 33 P.3d 218, 220 (Ct. App. 2001). A variance is fatal if it amounts to a constructive amendment. *State v. Jones*, 140 Idaho 41, 49, 89 P.3d 881, 889 (Ct. App. 2003). A constructive amendment occurs if a variance alters the charging document to the extent the defendant is tried for a crime of a greater degree or a different nature. *Id.*; *State v. Colwell*, 124 Idaho 560, 566, 861 P.2d 1225, 1231 (Ct.

2

App. 1993). In other words, a variance between a charging document and a jury instruction requires reversal only when it deprives the defendant of fair notice of the charge against which he or she must defend or leaves him or her open to the risk of double jeopardy. *State v. Wolfrum*, 145 Idaho 44, 47, 175 P.3d 206, 209 (Ct. App. 2007). In *State v. Folk*, 151 Idaho 327, 342, 256 P.3d 735, 750 (2011), the Idaho Supreme Court stated that the instructions to the jury must match the allegation in the charging document as to the means by which a defendant is alleged to have committed the crime charged. Otherwise, the Court explained, there can be a fatal variance between the jury instructions and the charging document. *Id.* In addition, where, as here, the defendant did not object to the alleged error below, to obtain relief on appeal for fundamental error the following three prongs must be met: (1) the defendant must demonstrate one or more of the defendant's unwaived constitutional rights were violated; (2) the error must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision; and (3) the defendant must demonstrate there is a reasonable possibility that the error affected the outcome of the trial. *State v. Perry*, 150 Idaho 209, 226, 245 P.3d 961, 978 (2010).

Day argues that the jury instruction allowed Day to be found guilty of lewd conduct for contact other than manual-genital contact, which was the only type of contact for which Day was charged in the information. Specifically, Day asserts that touching of the victim's breast area, which was the only type of contact about which the jury heard testimony in addition to the manual-genital contact, is a different type of contact from that originally charged and, further, is not contact for which Day could be found guilty of lewd conduct. Thus, Day concludes that the variance between the charging document and the jury instructions violated his right to due process and thereby amounted to constitutional error.

In *Folk*, 151 Idaho at 339, 256 P.3d at 747, the state charged Folk with lewd conduct by committing oral-genital contact. The jury was instructed as follows:

> In order for the defendant to be guilty of Lewd and Lascivious Conduct, the state must prove each of the following:
> 1. On or about December 25, 2007
> 2. in the state of Idaho
> 3. the defendant Jonathan Earl Folk committed an act of oral-genital contact upon or with the body of [Child].
> 4. [Child] was a child under sixteen (16) years of age, and
> 5. the defendant committed such act with the specific intent to arouse, appeal to, or gratify the lust or passions or sexual desires of either of them.

3

> If any of the above has not been proven beyond a reasonable doubt, then you must find the defendant not guilty. If each of the above has been proven beyond a reasonable doubt, you must find the defendant guilty.

During the jury's deliberations, it sent the court a note asking three questions. The first two questions asked whether the jury had to find that Folk committed an act of oral-genital contact upon the child or whether the jury could simply find that Folk committed some other act of lewd and lascivious conduct. The third question asked, if the jury could find Folk guilty of some act of lewd and lascivious conduct other than oral-genital contact, what the definition of lewd and lascivious conduct was. The court responded with a note stating as follows: "'Lewd and Liscivious [sic] Conduct' is the statutory name for a category of sexual touching crimes that include oral-genital contact, genital-genital contact, genital-anal contact, manual-genital contact, manual-anal contact, oral-anal contact, *etc.* Here the allegation is oral-genital (mouth to penis) contact, which is, by definition, lewd and lascivious conduct." *Id.* at 340, 256 P.3d at 748 (emphasis added).

In analyzing whether there was a fatal variance between the charging document and jury instructions, the Idaho Supreme Court first reiterated that Folk was charged with lewd conduct by committing oral-genital contact upon the child. The Court then stated that the instructions to the jury must match the allegation in the charging document as to the means by which a defendant is alleged to have committed the crime charged. *Id.* at 342, 256 P.3d at 750. Otherwise, the Court explained, there can be a fatal variance between the jury instructions and the charging document. *Id.* The Court also stated that the jury instruction must not permit the defendant to be convicted of conduct that does not constitute the type of crime charged. *Id.* The Court then explained that there was testimony from the mother that, when she entered the bedroom, she saw the child lying on his back on the bed and Folk kneeling down in front of the child with the child's legs around Folk and his hands on the child's hips. Folk testified that, just prior to the mother walking into the bedroom, he had been tickling the child's feet and belly. The Court reasoned that, if the jury believed that Folk was intending to gratify his lust, passions, or sexual desires, which the Court determined the jury obviously did, the jury could have found Folk guilty based upon this type of touching, due to the inclusion of "etc." in the instruction defining lewd and lascivious conduct. The Court also determined that this type of physical contact would not constitute the crime of lewd conduct. Thus, the Court concluded that the jury

4

instruction would have permitted the jury to find Folk guilty of conduct that did not constitute the crime of lewd conduct and vacated Folk's judgment of conviction.[1] *Id.*

In this case, as explained above, the state's information charging Day with lewd conduct alleged that Day "had manual to genital contact with [the victim] and/or caused [the victim] to have manual to genital contact with" Day. However, the jury was instructed that, in order for Day to be guilty of lewd conduct, the state had to prove that Day "committed an act or acts of manual-genital contact *or any other lewd or lascivious act* upon or with the body of" the victim (emphasis added). Inclusion of the language "or any other lewd or lascivious act" in the jury instruction had the same consequence as inclusion of the term "etc." in the jury instruction at issue in *Folk*. Specifically, while Day was charged with lewd conduct by committing manual-genital contact with the alleged victim, a friend of the victim testified that she saw Day put ice into the victim's bikini top and touch her breast. By determining that Day was guilty of lewd conduct, the jury believed Day was intending to gratify his lust, passions, or sexual desires and could have found Day guilty based upon the touching of the alleged victim's breast due to the inclusion of the language "or any other lewd or lascivious act" in the jury instruction. However, this type of physical contact would not constitute the crime of lewd conduct. *See State v. Kavajecz*, 139 Idaho 482, 487, 80 P.3d 1083, 1088 (2003). Thus, the jury instruction would have permitted the jury to find Day guilty of conduct that did not constitute the crime of lewd conduct.[2]

---

[1] The *Folk* Court did not specifically analyze whether Folk was deprived of fair notice or was at risk of double jeopardy. Because the instructions would have permitted the jury to find Folk guilty of conduct that did not constitute the crime of lewd conduct, the judgment of conviction was vacated.

[2] We note that Idaho Criminal Jury Instruction 929 for Lewd and Lascivious Conduct currently provides that, among other elements, in order for the defendant to be guilty, the state must prove:

> 3. the defendant [name] committed [an act of] [genital-genital contact] [or] [oral-genital contact] [or] [anal-genital contact] [or] oral-anal contact] [or] [manual-anal contact] [or] [manual-genital contact] [or] [any other] [a] [lewd or lascivious act] upon or with the body of [name of victim] . . .

While the model instruction includes "any other lewd or lascivious act," we caution against its use for the very reason a problem exists in this case. While inclusion of the language could be

We also note that, in *State v. Jones*, 140 Idaho 41, 49, 89 P.3d 881, 889 (Ct. App. 2003), Jones claimed there was a variance because the state presented evidence of two incidents of improper touching of the alleged victim that were not the bases of the charges. Jones argued that this amounted to a fatal variance because the jury could have used this evidence to convict him, thereby resulting in a conviction for a crime that he was not charged with. We determined that Jones's argument was without merit. Specifically, the testimony described by Jones was admitted as evidence of other misconduct under I.R.E. 404(b). Immediately after presentation of this evidence, the court gave the jurors a limiting instruction, informing them that they had just heard evidence that the defendant committed wrongs or acts other than that for which the defendant was on trial and that this evidence was presented only for the limited purpose of proving motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake. We concluded that, given this limiting instruction, no fatal variance existed. *Id.* Here, similar to *Jones*, the state presented evidence that Day touched the victim's breast that was not the basis of the state's charge against Day for lewd conduct. However, there is no evidence in the record indicating why such testimony was admitted or that such testimony was admitted as evidence of other misconduct under I.R.E. 404(b). Further, there was no limiting instruction informing the jury it had just heard evidence that Day had committed wrongs or acts other than that for which he was on trial. Thus, based upon *Folk* and *Jones*, we conclude that a fatal variance existed in this case.

The state argues that Day has failed to satisfy the second prong of *Perry* because he has not shown that the decision of his trial counsel to not object to the jury instructions was based on ignorance of the law or other objective shortcomings, as opposed to being merely a tactical decision. Specifically, the state asserts that Day's counsel may have known the jury instruction was given in error and might have chosen to leave the variance intact for potential appellate reversal should Day be convicted in an attempt at "sandbagging." However, the state's assertion would have this Court speculate that Day's counsel made a tactical decision to allow Day to be

---

harmless if no evidence of any conduct which might be considered lewd and lascivious existed in the case beyond the specifically charged conduct, *see Folk*, 151 Idaho at 340, 256 P.3d at 748, the phrase adds nothing to a proper instruction that must identify the particular type of conduct alleged.

found guilty of conduct that does not constitute the crime of lewd conduct--touching of the breast--simply for the sake of potentially obtaining appellate reversal. This is not conduct of a reasonable trial strategist.

Further, this Court addressed a similar situation in *State v. Sutton*, 151 Idaho 161, 254 P.3d 62 (Ct. App. 2011). In that case, the state argued, in the context of an omitted element in a jury instruction being raised for the first time on appeal, the error did not plainly exist because Sutton's failure to object may have been for tactical reasons. Specifically, the state hypothesized that defense counsel knew the instruction was error and speculated that Sutton decided not to object because the instructional error was minimal and Sutton could attempt to secure acquittal on his alibi defense, knowing that in the event that he lost he could appeal and claim the instruction was error with the hope of receiving a new trial. As in this case, the state asserted in *Sutton* that this was exactly the type of "sandbagging" that *Perry* warned against. In rejecting the state's argument, we determined that there was no indication in the record that Sutton knew any more about the law than the state or the trial court, nor was there any evidence or indication that Sutton was attempting to sandbag the court. We noted that there was no evidence Sutton presented the instruction to the trial court and that we were left with only the state's speculation that Sutton made a tactical decision not to object. This Court concluded that information outside the record was not necessary to determine that Sutton's failure to object was not a strategic decision. *Sutton*, 151 Idaho at 167, 254 P.3d at 68.

Similarly, in this case, there is no indication in the record that Day knew any more about the law than the state or the trial court, nor was there any indication that Day was attempting to sandbag the court. Indeed, during closing argument, the state argued to the jury that, pursuant to the jury instruction at issue in this case, in order for Day to be guilty of lewd conduct as charged, the state had to prove that Day committed an act of manual-genital contact or any other lewd or lascivious act upon the body of the victim. The state then asserted it had done so because it had presented testimony of the victim that indicated Day put his hand down her bikini bottom and felt her vagina and forced her hand down his swimsuit to touch his penis and has also presented testimony of the victim's friend indicating that Day stuck his hand inside the victim's bikini top and touched her breast. Additionally, the state presented the instruction to the district court that included the alternate element of "any other lewd or lascivious act upon or with the body of" the victim. We are left with only the state's speculation that Day made a tactical decision not to

object. We conclude that information outside the record is not necessary to determine that Day's failure to object to the jury instruction was not a strategic decision.

The state finally argues that Day has failed to satisfy the third prong of *Perry*. Specifically, the state asserts that, while it is hypothetically possible that the variance in this case allowed the jury to find Day guilty solely on his contact with the victim's breast and not either his contact with her vaginal area or on her contact with his genitals, Day cannot affirmatively show that this occurred. However, *Perry* does not require that Day make such an affirmative showing. Rather, as Day asserts, *Perry* requires that Day must demonstrate there is a *reasonable possibility* that the error affected the outcome of the trial. *Perry*, 150 Idaho at 226, 245 P.3d at 978. As the state concedes, the variance allowed a possibility that the jury found Day guilty solely on his contact with the victim's breast, which is contact for which Day was not charged in the information and for which he could not be convicted of lewd conduct. *See Kavajecz*, 139 Idaho at 487, 80 P.3d at 1088. We conclude that Day has demonstrated there is a reasonable possibility that the variance in this case affected the outcome of trial.

### III.

### CONCLUSION

Day has demonstrated that a fatal variance between the charging document and the jury instructions existed in this case and that this variance amounted to fundamental error. Accordingly, Day's judgment of conviction for lewd conduct with a minor under the age of sixteen and being a persistent violator is vacated.

Judge LANSING and Judge GRATTON, **CONCUR.**