**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51377**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: May 1, 2025** |
| **Plaintiff-Respondent,** | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| CODY JOHN SEWARD, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| **Defendant-Appellant.** | ) |
| | ) |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Rick Carnaroli, District Judge.

Judgment of conviction and unified sentence of forty years with a minimum period of confinement of twenty-five years for one count of lewd conduct with a child under the age of sixteen, <u>affirmed</u>.

Attorneys of Idaho; Sarah E. Tompkins, Boise, for appellant. Sarah E. Tompkins argued.

Hon. Raúl R. Labrador, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

---

GRATTON, Chief Judge

Cody John Seward appeals from his judgment of conviction for one count of lewd conduct with a child under the age of sixteen. Seward argues that a fatal variance exists between the charging document and the elements in the jury instructions on the alleged lewd conduct acts. Seward also argues that his sentence is excessive. For the reasons set forth below, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

The State charged Seward with one count of lewd conduct with a minor under the age of sixteen in violation of Idaho Code § 18-1508. The information listed the acts giving rise to the charge:

Cody John Seward, on or about September 1, 2020 to September 30, 2021 in the County of Bannock, State of Idaho, did willfully and lewdly, commit a lewd and lascivious act upon and/or with the body of a minor, [victim], under the age of sixteen years, to-wit: of the age of 5 years of age years, (sic) by genital to oral contact with the intent of arousing, and/or appealing to and/or gratifying the lust and sexual desires of the defendant and/or victim.

Prior to trial, both parties submitted proposed jury instructions. Seward's proposed instruction read, in relevant part, "the Defendant, Cody J. Seward committed an act of oral-genital contact upon or with the body of [victim]." The State's proposed instruction read, in relevant part, "the Defendant, CODY JOHN SEWARD, committed an act of genital-oral contact and/or any other lewd or lascivious act upon or with the body of [victim]." The district court's proposed instruction 17 stated, in relevant part, that to convict, the jury had to find beyond a reasonable doubt "the defendant, CODY JOHN SEWARD, committed an act of genital-oral contact and/or any other lewd or lascivious act upon or with the body of [victim]." Prior to giving the final instructions, the district court asked if either party had any objections to the court's proposed jury instructions. Defense counsel stated that the defense had no objections. Jury instruction 17 was given to the jury.

At trial, the victim testified Seward would blindfold her and "brush [her] teeth" with a "magic toothbrush" that was "squishy" and felt "[l]ike skin." This occurred in the living room while the victim was lying down. Her mouth felt "stretched out" when the "toothbrush" was in it. The magic toothbrush went into her throat. The magic toothbrush felt hard at the bottom had a "deep hole" that she could feel with her tongue, and the toothpaste tasted like "icky old chocolate" and "the stem of strawberries." Seward never said anything, and the victim could not hear anything while this was occurring.

The jury returned a guilty verdict. The district court imposed a sentence of forty years with twenty-five years determinate. Seward appeals.

## II.

### STANDARD OF REVIEW

The existence of an impermissible variance between a charging instrument and the jury instructions is a question of law over which we exercise free review. *State v. Sherrod*, 131 Idaho 56, 57, 951 P.2d 1283, 1284 (Ct. App. 1998).

When a defendant alleges that a constitutional error occurred at trial and the alleged error was not followed by a contemporaneous objection, the claim of error must be reviewed under the

fundamental error doctrine. *State v. Miller*, 165 Idaho 115, 119, 443 P.3d 129, 133 (2019). In order to obtain relief under the fundamental error doctrine, the defendant must demonstrate three things. First, the defendant must show that one or more of the defendant's unwaived constitutional rights were violated. *Id.* Second, the error must be clear and obvious, meaning the record must demonstrate evidence of the error and evidence as to whether or not trial counsel made a tactical decision in failing to object. *Id.* Third, the defendant must demonstrate that the error affected the defendant's substantial rights, which means the error identified in the first and second prongs of the test actually affected the outcome of the trial. *Id.*

## III.

## ANALYSIS

Seward contends there was a fatal variance between the charging document and jury instruction 17, creating a due process violation, which is reviewable as fundamental error. Seward argues the variance allowed the jury to find him guilty of uncharged acts of lewd conduct. The State argues that even though the language of the instruction does not exactly match the language of the charging document, it does not rise to the level of a fatal variance. Specifically, the State argues that the evidence does not suggest any lewd conduct other than oral-genital contact as charged. Consequently, there was no other acts of lewd conduct of which Seward lacked fair notice or for which the jury could convict and so Seward was not mislead or surprised in his defense. Seward also argues that the district court abused its discretion by imposing an excessive sentence. We will address these arguments in turn.

### A.     Variance

Seward argues the district court created fundamental error when it provided the jury with instruction 17, which created a fatal variance between the charging document and the instruction. The State argues there was no fundamental error because any variance was not fatal, Seward was not misled or embarrassed in the preparation of his defense, and Seward has failed to show prejudice because the evidence does not suggest Seward was convicted for any lewd conduct other than oral-genital contact as charged. Seward concedes he did not object to the jury instructions.

The issue presented is two-fold. The first question is whether there is a variance between the information charging Seward with one count of lewd conduct with a minor under sixteen and instruction 17. *See State v. Brazil*, 136 Idaho 327, 329, 33 P.3d 218, 220 (Ct. App. 2001). Second,

if a variance exists, the question is whether the variance rises to the level of prejudicial error requiring reversal of the conviction. *Id.*

A variance exists when the instructions to the jury do not match the allegation in the charging document as to the means by which a defendant is alleged to have committed the crime charged. *State v. Folk*, 151 Idaho 327, 342, 256 P.3d 735, 750 (2011). A variance between a charging instrument and a jury instruction is fatal and necessitates reversal only when it deprives the defendant of the right to fair notice or leaves him or her open to the risk of double jeopardy. *State v. Windsor*, 110 Idaho 410, 417-18, 716 P.2d 1182, 1189-90 (1985); *Brazil*, 136 Idaho at 330, 33 P.3d at 221. Put another way, a variance is fatal if it amounts to a constructive amendment. *State v. Jones*, 140 Idaho 41, 49, 89 P.3d 881, 889 (Ct. App. 2003). A constructive amendment occurs if a variance alters the charging document to the extent the defendant is tried for a crime of a greater degree or a different nature. *State v. Wolfrum*, 145 Idaho 44, 47, 175 P.3d 206, 209 (Ct. App. 2007); *Jones*, 140 Idaho at 49, 89 P.3d at 889; *State v. Colwell*, 124 Idaho 560, 566, 861 P.2d 1225, 1231 (Ct. App. 1993). When a constructive amendment occurs, the defendant is deprived of fair notice and is misled or embarrassed in the preparation or presentation of his defense. *Windsor*, 110 Idaho at 418, 716 P.2d at 1190.

A variance "is not fatal if the defendant had notice of it or was not misled or surprised in preparation of his defense." *Miller*, 165 Idaho at 120, 443 P.3d at 134. Thus, under *Miller*, a variance will not be considered fatal if the court finds that *either*: (1) the defendant had notice; *or* (2) the defendant was not misled or surprised in the preparation of his defense. In essence, Seward claims both grounds are satisfied in this case because: (1) Seward did not have notice of the other uncharged acts until the court gave jury instruction 17, which included the language "any other lewd or lascivious act"; and (2) Seward was not aware the uncharged acts could be considered by the jury, he was misled and surprised in his defense. We will address both arguments.

Here, the State's information charged Seward with one count of lewd conduct with a child under sixteen, alleging that Seward had committed a "lewd and lascivious act upon and/or with the body of [the victim] . . . by genital to oral contact." At trial, the district court adopted instruction 17, which stated, in relevant part, that the jury may convict if it found "the defendant, CODY JOHN SEWARD, committed an act of genital-oral contact *and/or any other lewd or lascivious act* upon or with the body of [the victim]." (Emphasis added.) Neither party objected to this instruction. On appeal, the parties do not dispute there was a variance.

4

This Court must determine whether the variance rises to the level of prejudice requiring the reversal of conviction. Seward contends the variance between the charging document, which only stated genital-oral contact, and the jury instruction, which included "and/or any other lewd or lascivious act," is fatal and cites *Folk*, 151 Idaho 327, 256 P.3d 735, as support. In *Folk*, Folk was charged only with oral-genital contact with a minor. *Id*. at 339, 256 P.3d at 747. During deliberations, the jury asked the court three questions. First, the jury asked whether it had to find that Folk committed an act of oral-genital contact upon the victim, asking: "Are we proving oral, genital contact, or is this an issue of any lewd and lascivious conduct?" *Id*. Next, the jury asked if it could find Folk committed some other act of lewd and lascivious conduct, asking, "Is this a matter of Jon doing oral sex with [Child] or any type of sexual advancement?" *Id*. The third question asked if the jury could find Folk guilty of some lewd or lascivious act other than oral-genital, and if so, "what a [sic] definition of lewd and lascivious." *Id*. at 340, 256 P.3d at 748. The district court responded with a note stating:

> "Lewd and Lascivious [sic] Conduct' is the statutory name for a category of sexual touching crimes that include oral-genital contact, genital-genital contact, genital-anal contact, manual-genital contact, manual-anal contact, oral-anal contact, etc. Here the allegation is oral-genital (mouth to penis) contact, which is, by definition, lewd and lascivious conduct."

*Id*.

The Supreme Court found the district court erred in two ways relevant to this opinion. First, because Folk was only charged with lewd conduct by oral-genital contact, "including genital-genital contact, genital-anal contact, manual-genital contact, manual-anal contact, and oral-anal contact in the jury instruction had no relevance to this case. Although it may have been harmless to have done so, since there was no evidence of any such contact, jury instructions should not include irrelevant information." *Id*. Second, because the jury asked if it could convict on conduct other than the oral-genital conduct, when the district court provided a definition that included alternate ways in which lewd conduct could occur, "the court was indicating that it could find [Folk] guilty of lewd and lascivious conduct rather than oral-genital contact. In this case, a valid conviction could be based only upon a finding beyond a reasonable doubt that Defendant engaged in an act of oral-genital contact." *Id*. The Supreme Court vacated the judgment of conviction and remanded the case. *Id*. at 342, 256 P.3d 750.

The holding in *Folk* was revisited in *Miller*, 165 Idaho 115, 443 P.3d 129. In *Miller*, the charging document alleged Miller committed injury to a child when "Miller 'willfully caused or

5

permitted the child to be placed in a situation that its person or health may be endangered . . . by driving an automobile, with the child as a passenger, in an aggressive or reckless manner and while eluding law enforcement.'" *Id*. at 121, 443 P.3d at 135. The jury instruction read: "The Defendant wilfully [sic] caused or permitted the child to be placed in a situation that may have endangered the child's person or health." *Id*. Miller argued that the charging document:

> [A]lleged Miller committed injury to a child by "*driving an automobile*, with a child as a passenger, in an aggressive or reckless manner while eluding law enforcement" whereas Jury Instruction No. 21 did not mention an automobile and instead stated Miller was guilty of the crime if he willfully caused the child to be "*placed in a situation* that may have endangered the child's person."

*Id*. During closing argument, the prosecutor stated that Miller stopped in a field and let the child run out of the vehicle, knowing there was a dangerous situation because law enforcement was there and one of the officers had pulled out his service weapon. *Id*. Miller argued that the prosecutor's closing statement, when combined with the jury instruction, created a new means of committing injury to a child because the jury could convict him for creating a situation in which the officer drew his weapon in the child's presence. According to Miller, this new means of committing an injury-to-child offense created a fatal variance. *Id*.

The Idaho Supreme Court reiterated that variances are not fatal when the defendant is on notice of the variant theory or if the defendant is not surprised or misled in his defense. *Id*. The Court concluded Miller was on notice that the State might address the child running out of the vehicle after it stopped. *Id*. The Court noted there was nothing in the charging document that indicated the State's argument was limited to events that occurred while the vehicle was moving. *Id*. Instead, the Court held that the fact of the child running from the vehicle was directly related to Miller's act that "willfully caused or permitted the child to be placed in a situation that its person or health may be endangered . . . by driving an automobile, with the child as a passenger, in an aggressive or reckless manner and while eluding law enforcement." *Id*.

The Court distinguished *Miller* from *Folk* for several reasons. First, in *Folk*, the variance permitted Folk to be convicted based on acts that were not covered by the charging statute but in *Miller*, nothing was alleged that would have allowed Miller to be convicted based on acts outside the injury to a child statute. *Id*. at 121-22; 443 P.3d 135-36. Second, Miller's counsel responded to witness testimony about the child running from the car and therefore was on notice that the child's actions outside of the vehicle may be addressed. *Id*. at 122, 443 P.3d at 136. During defense counsel's closing argument, he rebutted the allegation in the prosecutor's closing

6

statement and put on a defense regarding the allegation. *Id.* Ultimately, the Court held that because the variance was not fatal, Miller could not establish that his due process rights were violated and, as a result, failed to meet the first prong of the fundamental error analysis. *Id.* A failure to satisfy the first prong of the fundamental error analysis obviated the need to address the remaining two prongs, and Miller was unable to show fundamental error. *Id.*

*State v. Bernal*, 164 Idaho 190, 427 P.3d 1 (2018), is also instructive. In *Bernal*, the charged conduct was attempted assault, but the jury instruction included the theory of assault by threat. *Id.* at 195, 427 P.3d at 6. The Supreme Court held that the variance between the charging document and the jury instruction was not fatal because Bernal had notice of the variance and that the State might prove its case on the varied instruction. *Id.*

Here, the facts and circumstances surrounding Seward's case are distinguishable from *Folk* and *Miller* in a number of ways. Unlike in *Folk*, the jury in this case never submitted questions to the district court asking for clarification regarding the jury instructions. There is no evidence the jury sought to convict Seward on any basis other than genital-oral contact or of a crime of greater degree or of a different nature than charged. Second, the jury instruction at issue in *Folk* expressly included several other categories of lewd or lascivious conduct whereas here, the only category included in instruction 17 was "genital-oral contact." Third, Seward has, in effect, argued that he was surprised by the instructions but has not pointed to anything in the record to show his defense was adversely affected by the jury instructions given. In *Miller*, the Court found the charging document did not limit the State's ability to discuss Miller's actions outside of the vehicle when discussing danger to the minor. Conversely, the charging document in this case did limit the State to only discussing evidence that would support "genital-to-oral contact," and the State did not put on evidence of any other actions by Seward that would be considered lewd or lascivious.

In this case, the only conduct for which Seward could have been convicted was genital-oral contact. The victim, who was seven years old at the time of trial, testified extensively as to the "squishy" "toothbrush" with a "deep hole" that felt "like skin" which Seward used to ostensibly brush her teeth. These are the genital-oral acts charged by the State. Seward, however, contends that there were "*other* uncharged acts, such as laying [the victim] on the ground, blindfolding her, holding her mouth open to stick something in her mouth, brushing her teeth only when her stepmother was gone, and locking her brothers in their rooms while this occurred." Pointing to *Folk*, Seward contends that the language in the instruction "suggested that the jury could also

7

convict Mr. Seward for any other act against [victim]--aside from the charged conduct--provided that they found the act was performed lewdly." Seward contends that the jury could have convicted him for these "other uncharged acts" based on the jury instruction language that included "any other lewd or lascivious act."

None of these claimed other uncharged acts fit within the statutory definition of lewd or lascivious acts. None of these other acts, standing alone or in combination with each other, are lewd or lascivious acts. Without association with the charged acts, these other acts are not lewd or lascivious acts. The jury could not have considered these acts, outside the context of and associated with the charged acts, lewd or lascivious acts or convicted Seward based upon them. In *State v. Day*, 154 Idaho 476, 299 P.3d 788 (Ct. App. 2013) this Court noted that adding the language of "any other lewd or lascivious act" in the instructions could be harmless "if no evidence of any conduct which might be considered lewd and lascivious existed in the case beyond the specifically charged conduct." *Id*. at 481 n.2, 299 P.3d at 793 n.2. The specifically charged conduct here, genital-oral contact, was the only conduct alleged and supported at trial that would constitute lewd or lascivious conduct.

Stewart's claim that he was not on notice of other uncharged acts which may be considered by the jury as lewd or lascivious and that, therefore, he was misled and surprised in his defense is without merit as it is premised on the existence of other uncharged lewd or lascivious acts for which there was no evidence in this case. Again, the claimed other uncharged acts are simply not lewd or lascivious acts upon which the jury could have convicted Seward. Consequently, the variance is not fatal. Because the variance is not fatal, Seward has not shown the existence of an un-waived constitutional violation in satisfaction of the first prong of the fundamental error test.

B.    **Sentencing**

Seward argues that his sentence is excessive and that the district court improperly applied the legal standards because its determination was primarily based on Seward's limited cognitive capacity. The State argues the district court properly considered all the evidence before it, including the presentencing investigation, and that Seward has failed to show an abuse of discretion.

Sentencing is a matter for the trial court's discretion. Both our standard of review and the factors to be considered in evaluating the reasonableness of the sentence are well established and need not be repeated here. *See State v. Hernandez*, 121 Idaho 114, 117-18, 822 P.2d 1011, 1014-

15 (Ct. App. 1991); *State v. Lopez*, 106 Idaho 447, 449-51, 680 P.2d 869, 871-73 (Ct. App. 1984); *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007). Our role is limited to determining whether reasonable minds could reach the same conclusion as the district court. *State v. Biggs*, 168 Idaho 112, 116, 480 P.3d 150, 154 (Ct. App. 2020). Applying these standards, and having reviewed the record in this case, we cannot say that the district court abused its discretion.

## IV.

## CONCLUSION

Seward has failed to show that the variance between the charging document and jury instructions is fatal. Seward has further failed to show the district court abused its discretion in sentencing. Therefore, Seward's judgment of conviction and sentence are affirmed.

Judge HUSKEY and Judge TRIBE **CONCUR**.